UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AKSHAR PATEL,

        Plaintiff,

    v.

TODD M. LYONS, Acting Director,
U.S. Immigration and Customs Enforcement,

        Defendant.

Civil Action No. 25-1096 (ACR)

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

Table of Contents ...................................................................................................... i

Table of Authorities ................................................................................................. ii

Background ............................................................................................................... 2

    I.      Legal Background .................................................................................... 2

          A.      Nonimmigrant Students ................................................................. 2

          B.      Privacy Act .................................................................................... 2

          C.      The Student and Exchange Visitor Information System ("SEVIS") .......... 4

    II.      Factual and Procedural Background .......................................................... 5

Legal Standard ........................................................................................................ 6

Argument ................................................................................................................ 6

    I.      Patel Is Unlikely to Succeed on the Merits. ............................................. 7

          A.      The Privacy Act Forbids the Requested Relief. ........................... 7

          B.      There Is No Final Agency Action. ................................................ 9

          C.      ICE Did Not Violate Due Process. ............................................. 12

    II.      Patel Cannot Establish a Likelihood of Immediate Irreparable Harm. ................ 13

    III.    The Balance of Harms and the Public Interest Weigh Against Relief. ................ 16

    IV.    The Court Should Require Security. .......................................................... 16

Conclusion ............................................................................................................. 17

# TABLE OF AUTHORITIES

**Cases**                                                            Page(s)

*Aminjavaheri v. Biden,*
   Civ. A. No. 21-2246 (RCL), 2021 WL 4399690 (D.D.C. Sept. 27, 2021) ............................ 1

*Arpaio v. Obama,*
   797 F.3d 11 (D.C. Cir. 2015) ................................................................ 15

*Bakhtiari v. Beyer,.*
   Civ. A. No. 06-1489, 2008 WL 3200820 (E.D. Mo. Aug. 6, 2008) ........................................ 12

*Bennett v. Spear,*
   520 U.S. 154 (1997) ........................................................................ 9

*Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands,*
   461 U.S. 273 (1983) ........................................................................ 7

*CityFed Fin. Corp. v. Off. of Thrift Supervision,*
   58 F.3d 738 (D.C. Cir. 1995) ................................................................ 14

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013) ........................................................................ 15

*Cmty. Fin. Servs. Ass'n of Am. v. FDIC,*
   132 F. Supp. 3d 98 (D.D.C. 2015) ............................................................ 12

*Cohen v. United States,*
   650 F.3d 717 (D.C. Cir. 2011) ............................................................... 7

*Cudzich v. INS,*
   886 F. Supp. 101 (D.D.C. 1995) .............................................................. 8

*Davis v. Billington,*
   76 F. Supp. 3d 59 (D.D.C. 2014) ............................................................. 6

*Dorfmann v. Boozer,*
   414 F.2d 1168 (D.C. Cir. 1969) ............................................................ 1, 6

*Durrani v. U.S. Citizenship & Immigr. Servs.,*
   596 F. Supp. 2d 24 (D.D.C. 2009) ............................................................ 8

*El Rescate Legal Servs., Inc. v. Exec. Off. of Immigr. Review,*
   959 F.2d 742 (9th Cir. 1992) ............................................................... 16

*Farris v. Rice,*
   453 F. Supp. 2d 76 (D.D.C. 2006) ........................................................... 14

*Fiallo v. Bell,*
   430 U.S. 787 (1977) ....................................................................... 16

*Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
   920 F.3d 1 (D.C. Cir. 2019) ........................................................................... 6

*Harisiades v. Shaughnessy*,
   342 U.S. 580 (1952) ...................................................................................... 16

*Henke v. Dep't of Interior*,
   842 F. Supp. 2d 54 (D.D.C. 2012) ................................................................ 14

*Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*,
   736 F.3d 1239 (9th Cir. 2013) ...................................................................... 15

*Hudson v. Palmer*,
   468 U.S. 517 (1984) ...................................................................................... 13

*Indus. Safety Equip. Ass'n, Inc. v. EPA*,
   837 F.2d 1115 (D.C. Cir. 1988) .................................................................... 12

*League of Women Voters v. Newby*,
   Civ. A. No. 16-0236 (RJL), 2016 WL 8808743 (D.D.C. Feb. 23, 2016) ............. 14

*Louhghalam v. Trump*,
   230 F. Supp. 3d 26 (D. Mass. 2017) ............................................................ 13

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
   567 U.S. 209 (2012) ........................................................................................ 7

*Mathews v. Eldridge*,
   424 U.S. 319 (1976) ...................................................................................... 13

*Mazurek v. Armstrong*,
   520 U.S. 968 (1997) ........................................................................................ 6

*Mdewakanton Sioux Indians of Minn. v. Zinke*,
   255 F. Supp. 3d 48 (D.D.C. 2017) ................................................................ 13

*Nken v. Holder*,
   556 U.S. 418 (2009) ...................................................................................... 15

*Pom Wonderful LLC v. Pur Beverages LLC*,
   Civ. A. No. 13-6917, 2015 WL 10433693 (C.D. Cal. Aug. 6, 2015) ................... 15

*Raven v. Panama Canal Co.*,
   583 F.2d 169 (5th Cir. 1978) .......................................................................... 8

*Sampson v. Murray*,
   415 U.S. 61 (1974) ........................................................................................ 14

*Schnapper v. Foley*,
   667 F.2d 102 (D.C. Cir. 1981) ........................................................................ 7

*Spadone v. McHugh*,
    842 F. Supp. 2d 295 (D.D.C. 2012) ............................................................. 15

*Weinberger v. Romero-Barcelo*,
    456 U.S. 305 (1982) ..................................................................................... 16

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ............................................................................. 6, 14, 16

*Yunsong Zhao v. Va. Polytechnic Inst. & State Univ.*,
    Civ. A. No. 18-0189, 2018 WL 5018487 (W.D. Va. Oct. 16, 2018) ................. 12

**Statutes**

5 U.S.C. § 552a ............................................................................................. 2, 3
5 U.S.C. § 552a(a)(2) ...................................................................................... 3, 8
5 U.S.C. § 552a(d) ............................................................................................... 3
5 U.S.C. § 552a(d)(1)–(4) ................................................................................... 3
5 U.S.C. § 552a(g)(1) (C) ................................................................................... 8
5 U.S.C. § 702 ................................................................................................. 7, 8
5 U.S.C. § 704 ..................................................................................................... 9
5 U.S.C. § 704(a)(1) ............................................................................................ 8
5 U.S.C. § 706(2) ............................................................................................. 1, 6
5 U.S.C. §§ 552a(b)–(d) ...................................................................................... 3
8 U.S.C. § 1101(a)(15)(F)(i) ............................................................................... 2
8 U.S.C. § 1201(i) .............................................................................................. 13
8 U.S.C. § 1229a ............................................................................................ 7, 13
8 U.S.C. § 1372 (a) (1) ........................................................................................ 4
Tex. Transp. Code § 545.401(a) ........................................................................ 12

**Other**

8 C.F.R. § 214.1(d) .............................................................................................. 7
8 C.F.R. § 214.2(f)(1)(i) ....................................................................................... 2
8 C.F.R. § 214.2(f)(5)(i) ....................................................................................... 2
8 C.F.R. § 214.2(f)(16) ....................................................................................... 13
82 Fed. Reg. 7860 (Jan. 23, 2017) ..................................................................... 3
84 Fed. Reg. 3493 (Feb. 12, 2019) ..................................................................... 3
86 Fed. Reg. 69663 (Dec. 8, 2021) ..................................................................... 4

Plaintiff Akshar Patel, a national of India, brings an Administrative Procedure Act, 5 U.S.C. § 706(2), claim, challenging Immigration and Customs Enforcement's ("ICE's") termination of a record maintained in the Student and Exchange Visitor Information System ("SEVIS"). Patel, however, conflates the termination of this record with a termination of his status as a nonimmigrant student ("F-1 status") and demands that this Court overlook its jurisdictional limits, grant Patel extraordinary relief, and modify the Privacy Act record of a foreign national.

The Court should decline Patel's demand. First, Patel fails to demonstrate a likelihood of success on the merits: (a) the Privacy Act forbids the requested relief, (b) Patel misidentifies the final agency action, and (c) the government did not violate due process. Second, Patel fails to establish irreparable harm because (i) Patel's alleged harms are largely based on his incorrect assertion that the change in his SEVIS record changed his status, (ii) the alleged harms are monetary and, thus, by definition reparable at law; and (iii) any alleged harms are speculative. In addition, ICE has now issued a new policy that impacts Patel's ability to show irreparable harm. That new policy is attached to this opposition brief as Exhibit A and would apply to any future SEVIS terminations. And, third, the balance of harms and the public interest weigh in favor of the Executive's ability to control immigration.

Accordingly, for the reasons discussed below, the Court should deny Patel's demand for extraordinary relief, especially because Patel's demand is that he be granted the requested ultimate relief. *See Aminjavaheri v. Biden*, Civ. A. No. 21-2246 (RCL), 2021 WL 4399690, at \*5 (D.D.C. Sept. 27, 2021) ("Moreover, the D.C. Circuit has cautioned that a preliminary injunction 'should not work to give a party essentially the full relief he seeks on the merits.'" (quoting *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 n.13 (D.C. Cir. 1969) (citations omitted)).

# BACKGROUND

**I.**    **Legal Background**

**A.**    **Nonimmigrant Students**

The Immigration and Nationality Act ("INA"), as amended, allows for the entry of an alien, who "is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study. . . at an established college, university, seminary, conservatory, academic high school, elementary school, or other academic institution or in an accredited language training program in the United States." 8 U.S.C. § 1101(a)(15)(F)(i). To be admitted in F-1 status, an applicant must present a Form I-20, Certificate of Eligibility for Nonimmigrant Student Status, issued by a certified school in the student's name; present documentary evidence of financial support; demonstrate he or she intends to attend the school specified on the student's visa; and, if the student attends a public secondary school, demonstrate that he or she has reimbursed the local educational agency administering the school for the full, unsubsidized per capita cost of providing education at the school for the period of the student's attendance. 8 C.F.R. § 214.2(f)(1)(i). To maintain F-1 status, an alien must "pursue a full course of study" or "engage in authorized practical training[.]" *Id.* § 214.2(f)(5)(i).

**B.**    **Privacy Act**

The Privacy Act of 1974, Pub Law No. 93-579, 88 Stat 1896 (Dec. 31, 1974), codified at 5 U.S.C. § 552a, establishes practices for federal agencies regarding the collection, maintenance, use, and dissemination of information about individuals within systems of records. *See* Pub. L. 93-579, § 2, Dec. 31, 1974, 88 Stat. 1896 (codified at 5 U.S.C. § 552a (notes)). The Act gives agencies detailed instructions for managing their records and provides for various sorts of civil relief to individuals aggrieved by the Government's purported compliance failures. 5 U.S.C. § 552a. A system of records is defined as a group of records under the control of an agency from

which information is retrieved by the name of the individual or by some identifier assigned to the individual. *Id.* § 552a(a)(5). The Act sets forth agency record-keeping requirements, places restrictions on disclosure of information, and provides a means for individuals to access their records and seek correction of inaccurate information in those records. *Id.* §§ 552a(b)–(d).

Relevant here, 5 U.S.C. § 552a(d) addresses how an individual may access agency records, seek amendment to those records, exhaust administrative remedies prior to seeking judicial redress, and file a statement of disagreement to be included with the records. *Id.* § 552a(d)(1)–(4). After following the required steps to exhaust administrative remedies, a final determination by the agency head triggers the civil remedy provisions of § 552a(g)(1)(A). *Id.* § 552a(d)(3). The district courts have jurisdiction over any action brought pursuant to the civil remedy provisions of subsection (g) including an action to correct a record. *Id.* § 552a(g)(1). In an action to correct a record, the court can order the agency to make the correction and can assess costs and fees against the United States if the complainant substantially prevails. *Id.* § 552a(g)(2). Actions may also be brought to compel access to a record or for damages in certain instances. *Id.* §§ 552a(g)(1)(B), (g)(1)(C), (g)(1)(D).

The Privacy Act limits remedies to any individual who is "a citizen of the United States or an alien lawfully admitted for permanent residence." 5 U.S.C. § 552a(a)(2). In a subsequent 2016 amendment under the Judicial Redress Act, Congress extended certain Privacy Act remedies to citizens of designated countries and granted venue for such challenges to the U.S. District Court for the District of Columbia. 5 U.S.C. § 552a (statutory note), Pub. L. 114-126 (Feb. 24, 2016), 130 Stat. 282. The countries that have been designated pursuant to that amendment are the United Kingdom and majority of the countries of the European Union. 82 Fed. Reg. 7860–61 (Jan. 23, 2017); 84 Fed. Reg. 3493–94 (Feb. 12, 2019). India, where Patel is from, has not been designated.

C.      **The Student and Exchange Visitor Information System ("SEVIS")**

Congress required that "[t]he [Secretary of Homeland Security], in consultation with the Secretary of State and the Secretary of Education, . . . develop and conduct a program to collect from approved institutions of higher education, other approved educational institutions, and designated exchange visitor programs in the United States [certain information] with respect to aliens who have the status, or are applying for the status, of nonimmigrants under subparagraph (F), (J), or (M) of section 1101(a)(15) of this title." 8 U.S.C. § 1372(a)(1).

In exercise of this authority, the Secretary of Homeland Security created and maintains SEVIS, "a web-based system that the U.S. Department of Homeland Security (DHS) uses to maintain information on Student and Exchange Visitor Program-certified schools, F-1 and M-1 students who come to the United States to attend those schools, U.S. Department of State-designated Exchange Visitor Program sponsors and J-1 visa Exchange Visitor Program participants." ICE, Student and Exchange Visitor Information System Overview (available at: https://www.ice.gov/sevis/overview) (last visited Apr. 12, 2025).

ICE maintains SEVIS records in DHS/ICE–001 Student and Exchange Visitor Information System (SEVIS) System of Records. 86 Fed. Reg. 69663 (Dec. 8, 2021) ("DHS/ICE uses, collects, and maintains information on nonimmigrant students and exchange visitors, and their dependents, admitted to the United States under an F, M, or J class of admission, and the schools and exchange visitor program sponsors that host these individuals in the United States.").

Importantly, a SEVIS record does not necessarily indicate a termination of nonimmigrant status.  DHS, SEVIS Terminate a Student, https://perma.cc/E9C2-9GR5 (pinned Apr. 28, 2025) ("[T]ermination is not always negative. [School officials] can terminate records for several normal, administrative reasons.").  Under the INA in this context there are three separate and distinct concepts: (1) SEVIS, which is a recordkeeping system used by the Department to maintain

information on certain noncitizens who come to the United States to study, *see* ICE, SEVIS Overview, *supra*; (2) a visa, which is document issued by the State Department reflecting permission to apply for admission to the United States at a port of entry, *see* State Dep't, Visitor Visa, https://perma.cc/HN23-H3DK (pinned Apr. 28, 2025); and (3) immigration status, a noncitizen's formal immigration classification in the United States, *see* DHS, Maintaining Status, https://perma.cc/AM9P-LETR (pinned Apr. 28, 2025).   Terminating a SEVIS record only terminates the first of these; it does not, in-and-of-itself, terminate a noncitizen's immigration status or revoke a noncitizen's visa.  Watson Decl. (ECF No. 7-1) ¶ 12.

## II.    Factual and Procedural Background

Patel is a national of India. Compl. (ECF No. 1) ¶ 8. After a consular officer issued Patel a nonimmigrant visa in the F-1 category, a U.S. Customs and Border Protection officer admitted him in F-1 status for the duration of status to study at the University of Wisconsin—Milwaukee. *Id.* ¶¶ 9, 11–12. Patel states that his last school examination is on May 8, 2025, and he anticipates graduating on May 15, 2025. Decl. of Akshar Patel ¶ 7 (Apr. 10, 2025) (ECF No. 12-1)

Patel's information was run against criminal databases and was a verified match to a criminal history record for an arrest on November 2, 2018, for Reckless Driving, in violation of Texas Transportation Code 545.401(b), in Montgomery County, Texas. Decl. of Andre Watson ¶ 7 (Apr. 15, 2015) (ECF. No. 7-1). Records further show this charge was dismissed on February 21, 2019. *Id.* On April 2, 2025, the Counter Threat Lead Development Unit, a component of the National Security Division of Homeland Security Investigations, received communications from the Department of State, requesting that Patel's SEVIS record be terminated. *Id.* ¶ 8. On April 3, 2025, the Student and Exchange Visitor Program ("SEVP") set Patel's SEVIS record to "terminated" based on Patel's criminal history. *Id.* ¶ 9. On April 3, 2025, the University of

Wisconsin Milwaukee informed Patel that his SEVIS record was terminated. Compl. (ECF No. 1) ¶¶ 32; Patel Decl. (ECF No. 12-1), Ex. C (Termination Letter).

On April 11, 2025, Patel filed his complaint in this action. *Id.* He brings a single cause of action under the APA, 5 U.S.C. § 706(2), alleging that the termination of his SEVIS record was unlawful, arbitrary and capricious, and in violation of law. Compl. (ECF No. 1) ¶¶ 46–50. On April 17, 2025, the Court entered a temporary restraining order noting that ICE had returned Patel's status in SEVIS to "active" and ordering that ICE "may not change or otherwise modify Plaintiff's record in SEVIS solely on the basis of his arrest in November 2018 for a violation of Reckless Driving and subsequent dismissal of charge on February 21, 2019, by the Montgomery County Court." Order at 1 (Apr. 17, 2015) (ECF No. 11).

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Such a request involves the exercise of a very far-reaching power that "should be sparingly exercised." *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 (D.C. Cir. 1969) (citation omitted); *Davis v. Billington*, 76 F. Supp. 3d 59, 63 (D.D.C. 2014). The moving party must demonstrate all of the following factors by "a clear showing": (1) likelihood of success on the merits; (2) irreparable harm in the absence of preliminary injunctive relief; (3) the balance of equities between the parties tips in favor of the moving party; and (4) preliminary relief serves the public interest. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 10 (D.C. Cir. 2019).

## ARGUMENT

Patel equates the agency's action here—the modification of his SEVIS record—with the termination of his F-1 status. But Patel's complaint includes no allegations that ICE has taken any

action to terminate his nonimmigrant status, which requires (1) "the revocation of a waiver authorized on his or her behalf under section 212(d) (3) or (4) of the Act;" (2) "the introduction of a private bill to confer permanent resident status on such alien;" or, (3) "notification in the Federal Register, on the basis of national security, diplomatic, or public safety reasons." 8 C.F.R. § 214.1(d). Moreover, Patel does not show that ICE has instituted any action to revoke his F-1 status or remove him from the United States, which could only occur after the institution of removal proceedings and an opportunity to appear before an immigration judge. 8 U.S.C. § 1229a.

## I.    Patel Is Unlikely to Succeed on the Merits.

### A.    The Privacy Act Forbids the Requested Relief.

Even though the APA generally waives the government's immunity, APA section 702 "preserves 'other limitations on judicial review' and does not 'confer[] authority to grant relief if any other statute . . . expressly or impliedly forbids the relief which is sought.'" *Cohen v. United States*, 650 F.3d 717, 724–25 (D.C. Cir. 2011) (quoting 5 U.S.C. § 702) (citing *Schnapper v. Foley*, 667 F.2d 102, 108 (D.C. Cir. 1981) (concluding the government's immunity remains intact when "another statute expressly or implicitly forecloses injunctive [or declaratory] relief"))*; see Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012) ("[Section 702] prevents plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes."). "'[W]hen Congress has dealt in particularity with a claim and [has] intended a specified remedy'—including its exceptions—to be exclusive, that is the end of the matter; the APA does not undo the judgment." *Match-E-Be-Nash-She-Wish Band*, 567 U.S. at 216 (quoting *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 286 n.22 (1983)); *see Block*, 461 U.S. at 287 ("A necessary corollary of this rule [that the United States cannot be sued without the consent of Congress] is that when Congress attaches conditions to legislation

- 7 -

waiving the sovereign immunity of the United States, those conditions must be strictly observed, and exceptions thereto are not to be lightly implied.").

The Privacy Act provides a specific remedy. 5 U.S.C. § 552a(g)(1)(C) states,

> Whenever an agency . . . fails to maintain any record concerning any individual with such accuracy . . . as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual . . . the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection.

5 U.S.C. § 552a(g)(1)(C).

Patel's claims seek relief provided by the Privacy Act. The Privacy Act, however, precludes review because Patel is a foreign national. 5 U.S.C. § 552a(a)(2) provides, "the term 'individual' means a citizen of the United States or an alien lawfully admitted for permanent residence." 5 U.S.C. § 552a(a)(2). Patel makes no claim, nor can he, that he is either a U.S. citizen or a lawful permanent resident. As such, the Privacy Act precludes judicial review of Patel's claims. *See* 5 U.S.C. § 552a(a)(2); 5 U.S.C. § 704(a)(1); *Durrani v. U.S. Citizenship & Immigr. Servs.*, 596 F. Supp. 2d 24, 28 (D.D.C. 2009); *Cudzich v. INS*, 886 F. Supp. 101, 105 (D.D.C. 1995); *Raven v. Panama Canal Co.*, 583 F.2d 169, 171 (5th Cir. 1978) ("[I]t would be error for this Court to allow plaintiff, a Panamanian citizen, to assert a claim under the Privacy Act.").

Patel effectively concedes this point. He disputes neither that the Privacy Act is the exclusive means to seek the correction of a record in a system of records nor that, as a citizen of India and not the United States, he is excluded from the Act's exclusive remedial scheme. Indeed, he acknowledges that the Privacy Act excludes him from accessing its record-correction remedy. Mot. at 18–19. Because the Privacy Act "forbids the relief" he seeks, 5 U.S.C. § 702, he may not use the APA as an end run around the Privacy Act's limitations. Patel's request to alter his SEVIS record is therefore unlikely to succeed.

**B.      Plaintiff Incorrectly Identifies the Effects of the Supposed Final Agency Action.**

Agency action must be "final" to be reviewable under the APA. 5 U.S.C. § 704. Agency action is final only if (1) it marks "the consummation of the agency's decisionmaking process" and (2) is "one by which rights or obligations have been determined, or from which legal consequences flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations omitted). Patel fails to identify any final agency action because he focuses on a revocation of status, which has not occurred here. The Department has not terminated Patel's status—which the CBP officer granted for "duration of status" and therefore does not have an expiration date. Watson Decl. ¶ 12 (ECF No. 7-1) (noting termination of a SEVIS record is not termination of nonimmigrant status). As such, Patel fails to allege a final agency action.

Patel's argument that the change to his SEVIS record is a final agency action depends entirely on his insistence that changing his status to "terminated" in SEVIS renders him "without lawful immigration status in the United States." Mot. at 9. But the government has made clear that is simply not correct: "Terminating a record in SEVIS does not terminate an individual's nonimmigrant status in the United States." Watson Decl. ¶ 12 (ECF No. 7-1).

Patel's attempts to assign greater legal significance to the change in his SEVIS record fall flat and confuse distinct concepts of SEVIS records, visas, and immigration status. He highlights a notice of intent to deny that USCIS issued to an applicant seeking an H-1B status for a temporary worker, which stated that the beneficiary's SEVIS record showed that "their F-1 nonimmigrant status was terminated on April 10, 2025." Mot. at 1, 9–10 (citing Not. Intent to Deny (Apr. 18, 2025) (ECF No. 12-1 at 15)). But the notice itself is not a final determination, and the recipient can submit additional evidence to rebut USCIS's determination. Further, the government has addressed this notice in another hearing and explained that it is the government's understanding

that its statement about status is incorrect. *Ali v. Dep't of Homeland Sec.*, Civ. A. No. 25-1155, Hr'g Tr. 50:22–51:19 (Apr. 24, 2025), attached to Pls.' Not. Supp. Auth. (ECF No. 14-1).

Patel also cites the contents of the "Study in the States" website maintained by the Department of Homeland Security. Mot. at 7–8 (citing (updated Nov. 7, 2024). To be sure, as the website notes, a terminated SEVIS record "*could* indicate" that the nonimmigrant "no longer maintains F . . . status." But equating a terminated record with terminated status, as Patel does, commits the fallacy of equating possibility with actuality. A nonimmigrant is generally declared out of status only by an immigration judge during removal proceedings or by USCIS when adjudicating a petition for change of status. A terminated record in SEVIS alone does not terminate status. Watson Decl. ¶ 12 (ECF No. 7-1). Indeed, even third-party school officials have the ability to alter records in SEVIS and even to change a record from active to terminated, *see* https://perma.cc/VJW7-MKLJ, but certainly those third-party school officials do not have the legal authority to terminate a nonimmigrant's *status* in the United States. The same is true for terminations entered into SEVIS by SEVP. Watson Decl. ¶ 12 (ECF No. 7-1). Notably, the "no grace period" language that Patel emphasizes makes clear that the consequences described are for when the termination of the SEVIS record is "for any violation of status." *See* Mot. at 11. It is the "violation of status," not merely the termination of the SEVIS record, that requires the student to seek reinstatement or immediately leave the United States.

Patel also asserts, without cited evidence, that schools "uniformly" take the position that being listed as terminated in SEVIS "ends F-1 status." Mot. at 10. Even if true, a position taken by a third party that is contrary to the position of the government cannot imbue legal consequences to a government action. Patel faults the government (Mot. at 10) for providing only a declaration in support of its contention that SEVP lacks statutory and regulatory authority to "terminate

nonimmigrant status by terminating a SEVIS record," Watson Decl. ¶ 12 (ECF No. 7-1). But there is no better way to prove the nonexistence of something than by a declaration that the thing does not exist. The government cannot otherwise point directly to the absence of something. In any event, Patel elsewhere agrees with the government that no such authority exists. *See* Mot. at 15–16.

Patel also argues that ICE is unable to definitively state whether he is lawfully present in the United States. Mot. at 12–13. Not so. Based on the information available to ICE, Akshar Patel is lawfully present in the United States. Neither the criminal record described in the Watson declaration nor the change to his SEVIS record altered that fact.

Because Patel identifies no final agency action that has modified his legal status (the core of his claim), the Court should not reach the question of whether the change to Patel's SEVIS record was arbitrary and capricious. But, as reflected in the Watson declaration and the administrative record being submitted with this response, ICE had a reason for terminating Patel's SEVIS record.[1] His name was a verified match to a criminal record, and the Department of State requested that his SEVIS record be terminated. Watson Decl. ¶¶ 7–8 (ECF No. 7-1).

Patel's primary argument against ICE's reason for terminating his SEVIS record is to wrongly insist that he "has no criminal record." Mot. at 14. But Patel's submission shows that to be incorrect. On November 2, 2018, Patel was arrested in Montgomery County, Texas on a reckless driving charge under § 545.401 of the Texas Transportation Code, Watson Decl. ¶ 7 (ECF No. 7-1), which is a misdemeanor committed when a person "drives a vehicle in willful or wanton

---

[1]    The administrative record contains all known "communications between the State Department and U.S. Immigration and Customs Enforcement (ICE) concerning Plaintiff since January 1, 2025," which this Court also ordered the government to produce. Min. Order (Apr. 24, 2025).

disregard for the safety of persons or property," Tex. Transp. Code § 545.401(a). According to the documents submitted by Patel, the district attorney moved to dismiss the charge, not for an inability to prove it or for lack of evidence, but because Patel "completed terms," most likely of a plea agreement or diversion program. *See* Mot. to Dismiss at 1 (ECF No. 12-4). But the fact that the charges against Patel were dismissed erases neither the fact nor the record that those charges were brought and dismissed upon his satisfaction of conditions. Patel's insistence that he has "no criminal record" is incorrect.

      **C.    ICE Did Not Violate Due Process.**

      "For a Plaintiff to establish a procedural due process claim, it must show that: (1) it has a protected interest, (2) the government deprived it of this interest, and (3) the deprivation occurred without proper procedural protections." *Cmty. Fin. Servs. Ass'n of Am. v. FDIC*, 132 F. Supp. 3d 98, 122 (D.D.C. 2015) (citing *Indus. Safety Equip. Ass'n, Inc. v. EPA*, 837 F.2d 1115, 1122 (D.C. Cir. 1988)).  Plaintiffs have no property interest in a SEVIS record.  *See Yunsong Zhao v. Va. Polytechnic Inst. & State Univ.*, Civ. A. No. 18-0189, 2018 WL 5018487, at *6 (W.D. Va. Oct. 16, 2018) (holding that Plaintiff did not have an property interest in his SEVIS status that would implicate due process); *Bakhtiari v. Beyer*, Civ. A. No. 06-1489, 2008 WL 3200820, at *3 (E.D. Mo. Aug. 6, 2008) (holding that SEVIS regulations and their enabling legislation do not indicate a congressional intent to confer a benefit on nonimmigrant students).  This is because the SEVIS database is simply an administrative tool that does not affect the lawfulness of someone's nonimmigrant status.  *See Yunsong Zhao*, 2018 WL 5018487, at *4–5; Watson Decl. ¶ 12 (ECF No. 7-1). For example, regulations permit universities to terminate a SEVIS record, but Patel does not argue that universities have the authority to revoke their immigration status.  *See Deore v. Sec'y of DHS*, Civ. A. No. 25-11038, Dkt. 20, slip op. at 7–8, 12–13 (E.D. Mich. Apr. 17, 2025) (finding no likelihood of success on due process claim because "the Court cannot conclude based

on the current record whether it is likely that any of the students have lost their F-1 status or have lost any legal rights based solely on the termination of their SEVIS record"). Additionally, "[t]here is no constitutionally protected interest in either obtaining or continuing to possess a visa." *Louhghalam v. Trump*, 230 F. Supp. 3d 26, 35 (D. Mass. 2017) (collecting cases). As such, Patel's due process claims fail.

Moreover, even if there were such a protected interest, the processes afforded to Patel would satisfy the Fifth Amendment. *See Mathews v. Eldridge*, 424 U.S. 319, 339–40 (1976); *cf. Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("[W]e hold that an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available. For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy."). This is because the review procedures available to Patel (in the event Patel had lost his lawful nonimmigrant F-1 status) would allow him to seek reinstatement administratively from USCIS. 8 C.F.R. § 214.2(f)(16). And even if there were a reason to believe that Patel was likely to be placed into removal proceedings, the procedures available to Patel in immigration court comply with the Fifth Amendment. *See* 8 U.S.C. § 1229a; *see also id.* § 1201(i) (allowing the review of a visa revocation "in the context of a removal proceeding if such revocation provides the sole ground for removal under section 1227(a)(1)(B) of this title.").

## II.    Patel Cannot Establish a Likelihood of Immediate Irreparable Harm.

"Regardless of how the other three factors are analyzed, it is required that the movant demonstrate an irreparable injury." *Mdewakanton Sioux Indians of Minn. v. Zinke*, 255 F. Supp. 3d 48, 51 (D.D.C. 2017). "The basis of injunctive relief in the federal courts has always been

irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 88 (1974); *see also CityFed Fin. Corp. v. Off. of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995). The Supreme Court's "frequently reiterated standard requires Petitioners seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis in original). "[I]f a party makes no showing of irreparable injury, the court may deny the motion without considering the other factors." *Henke v. Dep't of Interior*, 842 F. Supp. 2d 54, 59 (D.D.C. 2012) (quoting *CityFed Fin.*, 58 F.3d at 747); *see also Chaplaincy of Full Gospel Churches*, 454 F.3d at 297 ("A movant's failure to show any irreparable harm is . . . grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief."). And where a party seeks to change the status quo through action rather than merely to preserve the status quo, typically the moving party must meet an even higher standard than in the ordinary case: the movant must show 'clearly' that [it] is entitled to relief or that extreme or very serious damage will result." *Farris v. Rice*, 453 F. Supp. 2d 76, 78 (D.D.C. 2006) (collecting authorities); *see League of Women Voters v. Newby*, Civ. A. No. 16-0236 (RJL), 2016 WL 8808743, at *1 (D.D.C. Feb. 23, 2016) ("This conclusion is bolstered by the fact that plaintiffs here seek not to maintain the status quo, but instead to restore the status quo ante, requiring this Court to proceed with the utmost caution.").

Patel has failed to demonstrate irreparable harm sufficient to warrant extraordinary injunctive relief. As an initial matter, ICE has now issued a new policy that impacts Patel's ability to show irreparable harm. That new policy is attached to this opposition brief as Exhibit A and would apply to any future SEVIS terminations.

In addition, Patel's claim to irreparable harm depends largely on his assertion that Patel has "lost his . . . F-1 status," Mot. at 19, which is not correct, Watson Decl. ¶ 12. Moreover, Patel's claim related to his loss of employment and his reputation (and thus future employment) do not

constitute irreparable harm. Mot. at 19. "Monetary injuries alone, even if they are substantial, ordinarily do not constitute irreparable harm." *Spadone v. McHugh*, 842 F. Supp. 2d 295, 301 (D.D.C. 2012) (citations omitted). Patel's claim that he "can no longer work pursuant to [optional practical training]," Mot. at 19, conflicts with his declaration, which makes clear that he is not currently working under optional practical training and indicates that he may not chose to do so, Patel Decl. ¶ 8 (noting that he would be eligible for optional practical training but his "primary goal at this time is to complete [his] education").

Additionally, Patel's reputational harm is speculative because a movant cannot show "certain[] impending" injury when the asserted injury is based on a "speculative chain of possibilities," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013), or on "speculation about the decisions of independent actors," *id*. at 414. As the D.C. Circuit has cautioned: "Because of the generally contingent nature of predictions of future third-party action," a court should be "sparing in crediting claims of anticipated injury by market actors and other parties alike." *Arpaio v. Obama*, 797 F.3d 11, 23 (D.C. Cir. 2015); *see also Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) (while injunctive relief may be ordered to prevent reputational harm, a finding of reputational harm may not be based on "pronouncements [that] are grounded in platitudes rather than evidence"); *Pom Wonderful LLC v. Pur Beverages LLC*, Civ. A. No. 13-6917, 2015 WL 10433693, at *11 (C.D. Cal. Aug. 6, 2015) (unsubstantiated statements were "not *evidence* that [plaintiff's] reputation and goodwill are likely to be harmed absent injunctive relief" (emphasis in original)).

Moreover, any claims related to the possibility of removal proceedings do not constitute irreparable injury. *See Nken v. Holder*, 556 U.S. 418, 435 (2009) ("[T]he burden of removal alone cannot constitute the requisite irreparable injury.").

As such, the Court should find that Plaintiff has not established irreparable harm.

## III.    The Balance of Harms and the Public Interest Weigh Against Relief.

The party seeking a preliminary injunction must show that the balance of equities tips in their favor and that the injunction is in the public interest. *Winter*, 555 U.S. at 20. A court "'should pay particular regard for the public consequences'" of injunctive relief. Id. at 24 (quoting Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982)). Here, the public interest weighs in favor of denying the motion. "Control over immigration is a sovereign prerogative." *El Rescate Legal Servs., Inc. v. Exec. Off. of Immigr. Review*, 959 F.2d 742, 750 (9th Cir. 1992); *see Fiallo v. Bell*, 430 U.S. 787, 792 (1977) ("Our cases have long recognized the power to . . . exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control."); *Harisiades v. Shaughnessy*, 342 U.S. 580, 588–89 (1952) ("[A]ny policy towards aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations," and such "matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference.").

Thus, the balance of the equities weighs in favor of the Government.

## IV.    The Court Should Require Security.

Federal Rule of Civil Procedure 65(c) states, "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). To the extent that the Court grants relief to Plaintiff, Defendants respectfully request that the Court require Plaintiff to post security in an appropriate amount.

## CONCLUSION

For these reasons, the Court should deny Patel's motion for a preliminary injunction.

Dated: April 28, 2025                    Respectfully submitted,

                                         EDWARD R. MARTIN, JR., D.C. Bar #481866
                                         United States Attorney

                                         BRIAN P. HUDAK
                                         Chief, Civil Division

                                         By:        */s/ Johnny Walker*
                                             JOHNNY H. WALKER, III
                                             Assistant United States Attorney
                                             601 D Street, NW
                                             Washington, DC 20530
                                             (202) 252-2511

                                         *Attorneys for the United States of America*