IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Akshar Patel, | ) | C/A No.: 1:25-cv-01096-ACR |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Todd M. Lyons, Acting Director, U.S. | ) | |
| Immigration and Customs Enforcement, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MOTION FOR SUMMARY JUDGMENT**

Defendant U.S. Immigration and Customs Enforcement ("ICE") terminated Plaintiff Akshar Patel's ("Mr. Patel") SEVIS record and F-1 status with no notice, no legal basis, and no individualized determination. Despite ICE's voluntary cessation of its illegal conduct, this case is not moot; rather, it is more important than ever. While ICE will argue this case is moot due to the new "policy" issued, and that Mr. Mashatti did not challenge the policy, this is legally irrelevant. The new policy is just the written memorandum of ICE's illegal actions that necessitated this case, and it is the ultra vires activity, not the document, that is unlawful. For the reasons below, this Court should, as courts across the nation[1] have continued to do, declare ICE's termination

---

[1] *See, e.g., Doe v. Trump*, — F. Supp. 3d —, 2025 WL1467543 (N.D. Cal. May 22, 2025); *Du v. U.S. Dep't of Homeland Security*, No. 3:25-cv-644, 2025 WL 1549098, *5-7. (D. Conn. May 31, 2025); *Roe v. Noem*, 25-cv-40, 2025 WL 1382930, at *3-4 (D. Mont. May 13, 2025) (same); *Ortega Gonzalez v. Noem*, No. 6:25-cv-632, 2025 WL 1355272 (D. Or. May 9, 2025) (same); *Doe #1 v. Trump*, No. 25-cv-4188, 2025 WL 1341711, *6-*7 (N.D. Ill. May 8, 2025) (same); *Vyas v. Noem*, No. 3:25-cv-0261, 2025 WL 1351537, at *6-*7 (S.D.W.V. May 8, 2025) (same); *Madan B.K. v. Noem*, No. 1:25-cv-419, 2025 WL 1318417, *8-*9 (W.D. Mich. May 7, 2025) (same); *Doe 1 v. Bondi*, No. 1:25-cv-1998, 2025 WL 1482733, at *10-*11 (N.D. Ga. May 2, 2025) (same); *Para Rodriguez v. Noem*, No. 3:25-cv-616, 2025 WL 1284722, at *9-*10 (D. Conn. May 1, 2025) (same); *Doe No. 1 v. Noem*, No. 25-cv-1962, 2025 WL 1224783, *7 (E.D. Pa. Apr. 28, 2025) (same).

unlawful, set it aside, and enjoin it from terminating Mr. Patel's SEVIS and F-1 status again for any reason other than those permitted under the relevant regulations.

## UNDISPUTED FACTS

Mr. Patel is a citizen and national of India. ECF No. 2-3 at 1. In 2018, Mr. Patel was accepted into the University of Wisconsin Madison's ("UWM") bachelor program for information science. . *Id.* Mr. Patel applied for an F-1 visa, acquired one, and sought admission at a lawful port of entry as an F-1 student. *Id.* at 8. He started classes on time in the fall of 2018. *Id.* at 1.

While attending classes, but on leave, Akshar was arrested in Montgomery County, Texas for recklessly driving a motor vehicle due to high speed. The District Attorney dismissed the charges on February 21, 2019. Mr. Patel has no other criminal matters. Throughout this period, Mr. Patel continued attending classes. His arrest did not interfere with his attendance at UWM. There is no indication he did anything to violate his F-1 status. *Id.*

On April 1, 2025, Homeland Security Investigations ("HSI") emailed a list to various people at the U.S. Department of State. ECF No. 17 at 001. The list contained "positive NCIC hits of current foreign students." *Id.* at 002. The list included Mr. Patel; it indicated he had been arrested and all charges had been dismissed. *Id.* at 021. The following day, the State Department responded and indicated it cross referenced HSI's list with its visa records. *Id.* at 12. Mr. Patel was on the list of students with current visas *Id.* at 55. Without any individualized review, HSI instructed ICE to "terminate all in SEVIS." *Id.* at 026.

On April 2, 2025, UWM advised Mr. Patel that his SEVIS record had been terminated by ICE through the Student Exchange Visitor Program (SEVP) office, for the following reason:

> TERMINATION REASON: OTHERWISE FAILING TO MAINTAIN STATUS – Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated.

ECF No. 2-3 at 3. ICE did not give Mr. Patel any notice or opportunity to respond. *Id.* at 2. The SEVIS termination immediately deprived Mr. Patel of his SEVIS record and nonimmigrant status.

This Court restrained the legal effect of the termination on April 17, 2025. ECF No. 11. On April 26, 2025, ICE issued a new "policy" claiming authority to terminate SEVIS "for a variety of reasons" on a nonexclusive list. ECF No. 16-1 at 1. ICE went so far as to claim the following: "When SEVP has objective evidence that a nonimmigrant visa holder is no longer complying with the terms of their nonimmigrant status for any reason, then the SEVIS record may be terminated on that basis." *Id.* at 2.

## ARGUMENT

Ordinarily, a court may grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). But "when a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal" and "the entire case on review is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001) (collecting cases) (internal citations and quotation marks omitted). In such a case, "[s]ummary judgment thus serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Franciscan St. Margaret Health v. Azar*, 407 F. Supp. 3d 28, 33 (D.D.C. 2019) (quoting *Citizens for Responsibility & Ethics in Wash. v. SEC*, 916 F. Supp. 2d 141, 145 (D.D.C. 2013)). "[A] court need not and ought not engage in fact finding" given that "determining the facts is generally the agency's responsibility" and review is "typically limited to the administrative record." *Kondapally v. U.S.*

3

*Citizenship & Immigr. Servs.*, 557 F. Supp. 3d 10, 20 (D.D.C. 2021) (quoting *Lacson v. U.S. Dep't of Homeland Sec.*, 726 F.3d 170, 171 (D.C. Cir. 2013)).

A final agency action is arbitrary and capricious if:

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). However, to even assess a decision under these criteria, the decision must constitute reasoned decisionmaking. *ITServe All., Inc. v. Cissna*, 443 F. Supp. 3d 14, 42-43 (D.D.C. 2020). The "agency must articulate an explanation" for an adverse agency action. *Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343, 1350 (D.C. Cir. 2014). It is a "fundamental requirement of administrative law [] that an agency set forth its reasons for decision; an agency's failure to do so constitutes arbitrary and capricious agency action." *Tourus Records, Inc. v. Drug Enf't Admin.*, 259 F.3d 731, 737 (D.C. Cir. 2001) (internal quotation marks omitted). The agency must explain "why it chose to do what it did." *Id.* Conclusory statements are insufficient; rather, an "agency's statement must be one of reasoning." *Butte Cnty., Cal. v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010).

As a threshold issue, ICE's SEVIS/F-1 termination lacks reasoned decisionmaking because it fails to provide any explanation. Its conclusory statement fails to identify the criminal record that its termination is based upon and this is meaningful because *Mr. Patel has no criminal history*. But the actual decision provided no details because ICE failed to provide even a perfunctory explanation. And of course, ICE cannot rely on post-hoc rationalizations in litigation affidavits to overcome deficiencies in the decision. *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419 (1971) (noting litigation affidavits "have traditionally been found to be an inadequate basis

for review."). Similarly, ICE revealed no individualized consideration of Mr. Patel's actual facts, which precludes any ability for ICE to put forth reasoned decisionmaking that provide a rational connection between the facts found and the choice made. *Doe v. Trump*, — F. Supp. 3d —, 2025 WL 1467543, *9 (N.D. Ca. May 22, 2025). Without an individualized decision, the decision cannot contain reasoned decisionmaking. Thus, this constitutes a lack of reasoned decisionmaking and renders the decision arbitrary and capricious.

To the extent ICE's SEVIS termination contains reasoned decision making, its actions are *ultra vires* because no statute or regulation gives ICE authority to terminate Plaintiff's SEVIS record and F-1 status for a mere arrest. First, no statute gives ICE authority to terminate a SEVIS record and F-1 status through a mere notation in SEVIS. Second, the regulations are clear on how ICE can terminate a SEVIS record and F-1 status:

> [T]he Code of Federal Regulations permits termination of a student's F-1 visa status in three ways: 1) by revoking a waiver that the Attorney General had previously authorized under § 212(d)(3) or (4) of the Immigration and Nationality Act; 2) "by the introduction of a private bill to confer permanent resident status," or 3) "pursuant to notification in the Federal Register, on the basis of national security, diplomatic, or public safety reasons."

See *Feng v. Dir. U.S. Immigration and Customs Enforcement*, 935 F.3d 172, 176 (3rd Cir. 2019) (quoting 8 C.F.R. § 214.1(d)). ICE has not taken any of these steps to terminate Plaintiff's SEVIS record or F-1 status. And its new policy goes well beyond these regulatory bases. Even if ICE could terminate a SEVIS record and F-1 status for students who commit acts that regulations define as a failure to maintain status, there is no indication that Plaintiff has engaged in any such behavior. *See* 8 C.F.R. §§ 214.1(e)-(5). Further, ICE can revoke and deny status if the student's school fails to satisfy its mandatory reporting requirements, but there are no such allegations here. 8 U.S.C. §1372(d)(2). The termination on grounds beyond those articulated in regulation are ultra vires. While ICE is likely to argue that the termination of SEVIS is not a final agency

action, and that Mr. Mashatti is conflating SEVIS termination with status termination, this Court has already rejected that frivolous argument as it has no basis in law or fact.

To the extent ICE's SEVIS/F-1 termination is authorized, ICE's SEVIS termination failed to consider an important aspect of the problem: Mr. Patel has no criminal record. Despite his arrest, and despite ICE's attempts in litigation to rewrite basic tenants of US criminal law by classifying Mr. Patel as a criminal, the charges were dismissed as the record even states. Similarly, the decision runs counter to any evidence in the "record" because the decision claims Mr. Patel has a criminal record, but he does not. Further, claiming the termination is based on a criminal record when Mr. Patel has no criminal record cannot be ascribed to a difference in view or agency expertise because the existence of a criminal record is a question of fact. ICE's SEVIS termination is arbitrary and capricious.

Even if ICE followed the statute, regulations, and policies, it is violating Plaintiff's procedural due process rights. To succeed on a procedural due process claim, "a plaintiff must [first] show that there was a cognizable liberty or property interest at stake." *Smirnov v. Clinton*, 806 F. Supp. 2d 1, 12 (D.D.C. 2011) (citing *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)). Then, "[i]f a cognizable liberty or property interest is at stake, due process requires only 'a meaningful opportunity to present' a case." *Hamal v. U.S. Dep't of Homeland Sec.,* No. 19-cv-2534, 2020 WL 2934954, at *4 (D.D.C. June 3, 2020) (quoting *Mathews*, 424 U.S. at 349, 96 S.Ct. 893). In other words, a plaintiff must show that "the procedures the government provided were constitutionally inadequate." *Ghadami v. U.S. Dep't of Homeland Sec.*, No. 19-cv-397, 2020 WL 1308376, at *10 (D.D.C. March 19, 2020) (citing *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (per curiam)).

Where a plaintiff has a cognizable due process interest, the process must satisfy the strictures of due process under *Matthews v. Eldridge*, 424 U.S. 319 (1976). Under *Matthews*, the Court should balance three factors:

> [T]he specific dictates of due process generally requires consideration of three distinct factors: [1] the private interest that will be affected by the official action; [2] the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [3] the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335. Under *Matthews*, the lack of timely pre-termination notice and opportunity to respond renders ICE's termination process unconstitutional.

Here, nothing in the law or regulations makes Mr. Patel's SEVIS record discretionary. Rather, once admitted to the United States, Mr. Patel had a legitimate claim of entitlement to her SEVIS record, F-1 status, OPT, and work authorization. Mr. Patel thus has a cognizable due process interest in his F-1 status as property. In the alternative, ICE terminated Mr. Patel's SEVIS and effectively terminated F-1 status based on false allegations of a criminal record. This clearly triggers a cognizable liberty interest as ICE's SEVIS termination stigmatizes Mr. Patel based on a moral ground. As such, Mr. Patel is entitled to constitutional process.

First, Mr. Patel's private interest is substantial. He is engaged actively in a practical training program where she is working for a potential employer. Without his SEVIS record, she can no longer work because the school cannot update the SEVIS record with the mandatory reporting requirements. And he now must explain to any future employer and the government that he lost her immigration status and any work authorization associated with it for a criminal record that does not exist. Further, termination of her SEVIS record and F-1 status will harm Mr. Patel's ability to travel back to the United States because he will have to explain to a consular

officer and border agent why his SEVIS and F-1 status was terminated for a criminal record that does not exist. This private interest cannot be overstated.

Second, the risk of erroneous deprivation under ICE's current process is incredibly high. ICE apparently terminated SEVIS and F-1 status for any student who had an interaction with law enforcement regardless of the nature, outcome, or pendency of any actual criminal charges. If ICE had simply given Mr. Patel notice and an opportunity to respond, she could have clarified all charges were dismissed. But without pretermination notice or opportunity to respond, ICE is mistakenly terminating SEVIS and F-1 status for students with no criminal history. ICE's own regulations create additional process—through § 214.1(g) or § 1229—because it even favors process to prevent erroneous deprivations of SEVIS records and F-1 status.

Finally, the Government would benefit from the additional step because international students are good for the United States, their universities, and American students. If ICE continues to illegally and whimsically terminate SEVIS and F-1 status, international students will stop coming to the United States and public and private universities will lose students who pay full tuition. And again, Plaintiff's proposed additional step—pretermination notice and opportunity to respond—does not prevent ICE from using its other authorities to terminate their status under § 214.1(d) or prosecute removal proceedings under § 1229. ICE's termination of Plaintiff's SEVIS and F-1 status is likely to violate the Plaintiff's procedural due process rights and, therefore, this Court should enjoin the legal effects of the termination.

To the extent ICE argues that the Privacy Act provides an adequate alternative remedy—therefore precluding review under the Administrative Procedure Act—because Plaintiff seeks to challenge a change to a Privacy Act system of records. Gov't Resp. to TRO at 5-8. But ICE admits that nonimmigrants—like F-1 students—cannot bring a cause of action under the Privacy

Act, only U.S. citizens and lawful permanent residents. Gov't Resp. at 7 (citing 5 U.S.C. § 552a(a)(2)). Thus, "the Privacy Act clearly does not provide plaintiff another adequate remedy, as plaintiff's ability to seek relief under the Privacy Act is not even 'doubtful,' but nonexistent." *Doe v. Noem, et al.*, No. 2:25-CV-01103-DAD-AC, 2025 WL 1134977 (E.D. Cal. Apr. 17, 2025). Thus, the Privacy Act does not preclude review over Plaintiff's APA challenge to ICE's termination of their SEVIS record and F-1 status because nonimmigrants like Plaintiff cannot bring claims under the Privacy Act. This argument is borderline frivolous and has been soundly rejected by this Court and others that have broached the topic.

## CONCLUSION

For the reasons above, this Court should declare ICE's termination decision unlawful, set it aside, and enjoin ICE from terminating Mr. Patel's SEVIS and F1 again in violation of the statute or regulations.

June 26, 2025                                       Respectfully submitted,

                                                    s/Brad Banias
                                                    BRAD BANIAS
                                                    Banias Law, LLC
                                                    602 Rutledge Avenue
                                                    Charleston, SC 29403
                                                    843.352.4272
                                                    brad@baniaslaw.com

                                                    s/Steven A. Brown
                                                    STEVEN A. BROWN
                                                    Reddy Neumann Brown PC
                                                    11000 Richmond Ave, Suite 600
                                                    Houston, TX 77042
                                                    P: (713) 953-7787 ext. 145
                                                    steven@rnlawgroup.com
                                                    TXB 24091928

                                                    Attorneys for Plaintiff