UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AKSHAR PATEL,<br><br>    Plaintiff,<br><br>    v.<br><br>TODD M. LYONS, Acting Director,<br>U.S. Immigration and Customs Enforcement,<br><br>    Defendant. | Civil Action No. 25-1096 (ACR) |

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

*Page*

INTRODUCTION ................................................................................................................... 1

BACKGROUND ..................................................................................................................... 2

ARGUMENT ........................................................................................................................... 2

    I.     This Case is Moot. ................................................................................................ 2

    II.    The Privacy Act Forbids the Requested Relief. ..................................................... 4

    III.   Patel's Arbitrary-and-Capricious Claim Fails. ....................................................... 8

    IV.   ICE Did Not Violate Due Process. ...................................................................... 10

    V.    Patel's Ultra Vires Argument Fails..................................................................... 12

CONCLUSION...................................................................................................................... 14

## **TABLE OF AUTHORITIES**

**Cases** *Page(s)*

*Bakhtiari v. Beyer,*
  Civ. A. No. 06-1489, 2008 WL 3200820 (E.D. Mo. Aug. 6, 2008) .................................. 10-11

*Bd. of Governors of the Fed. Res. v. MCorp Fin., Inc.*,
  502 U.S. 32 ................................................................................................................. 12, 13

*Bennett v. Spear*,
  520 U.S. 154 (1997) ....................................................................................................... 8, 9

*Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*,
  461 U.S. 273 (1983) ............................................................................................................ 4

*Cmty. Fin. Servs. Ass'n of Am. v. FDIC*,
  132 F. Supp. 3d 98 (D.D.C. 2015) .................................................................................... 10

*Cohen v. United States*,
  650 F.3d 717–25 (D.C. Cir. 2011) ...................................................................................... 4

*Cudzich v. INS*,
  886 F. Supp. 101 (D.D.C. 1995) ......................................................................................... 6

*Durrani v. U.S. Citizenship & Immigr. Servs.*,
  596 F. Supp. 2d 24 (D.D.C. 2009) ...................................................................................... 6

*Eagle Trust Fund v. U.S. Postal Serv.*,
  811 F. App'x 669 (D.C. Cir. 2020) .................................................................................... 13

*Hudson v. Palmer*,
  468 U.S. 517 (1984) .......................................................................................................... 11

*Indus. Safety Equip. Ass'n, Inc. v. EPA*,
  837 F.2d 1115 (D.C. Cir. 1988) ........................................................................................ 10

*Leedom v. Kyne*,
  358 U.S. 184 (1958) .................................................................................................... 12, 13

*Liff v. Off. of Inspector Gen.*,
  881 F.3d 912 (D.C. Cir. 2018) ............................................................................................ 7

*Louhghalam v. Trump*,
  230 F. Supp. 3d 26 (D. Mass. 2017) ................................................................................. 11

*M Nicolas Enters., LLC v. United States, No. 20-691C*,
  2022 WL 558043 (Fed. Cl. Feb. 23, 2022) ......................................................................... 7

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
   567 U.S. 209 (2012) .................................................................................................. 4

*Mathews v. Eldridge*,
   424 U.S. 319 (1976) ................................................................................................ 11

*McBryde v. Comm. to Review Circuit Council Conduct & Disability Orders of the Judicial Conference of the U.S.*,
   264 F.3d 52 (D.C. Cir. 2001) ............................................................................. 12-13

*Nat'l Air Traffic Controllers Ass'n AFL-CIO v. Fed. Serv. Impasses Panel*,
   437 F.3d 1256 (D.C. Cir. 2006) ............................................................................... 13

*Nyunt v. Chairman, Broad. Bd. of Governors*,
   589 F.3d 445 (D.C. Cir. 2009) ................................................................................. 12

*Postal Police Officers Ass'n v. United States Postal Serv.*,
   502 F. Supp. 3d 411 (D.D.C. 2020) ......................................................................... 13

*Pub. Citizen, Inc. v. Fed. Energy Regul. Comm'n*,
   92 F.4th 1124 (D.C. Cir. 2024) .................................................................................. 2

*Raven v. Panama Canal Co.*,
   583 F.2d 169 (5th Cir. 1978) ................................................................................. 6-7

*Schnapper v. Foley*,
   667 F.2d 102 (D.C. Cir. 1981) ................................................................................... 4

*Schroer v. Billington*,
   525 F. Supp. 2d 58 (D.D.C. 2007) ........................................................................... 12

*Thomas v. Fed. Aviation Admin.*,
   Civ. A. No. 05-2391 (CKK), 2007 WL 219988 (D.D.C. Jan. 25, 2007) .................... 7

*True the Vote v. IRS*,
   831 F.3d 551 (D.C. Cir. 2016) ................................................................................... 2

*Yunsong Zhao v. Va. Polytechnic Inst. & State Univ.*, Civ. A.
   No. 18-0189, 2018 WL 5018487 (W.D. Va. Oct. 16, 2018) ............................. 10, 11

**Statutes**

5 U.S.C. § 552a(a)(2) ........................................................................................................ 6

5 U.S.C. § 552a(d) ............................................................................................................ 5

5 U.S.C. § 552a(g) ............................................................................................................ 5

5 U.S.C. § 702 .......................................................................................................... 4, 7, 8

5 U.S.C. § 704 ............................................................................................................. 7, 8

5 U.S.C. § 704(a)(1) .......................................................................................................... 6

8 U.S.C. § 1201(i) .................................................................................................................. 11
8 U.S.C. § 1229a ............................................................................................................. 11, 13
Tex. Transp. Code § 545.401(a) ............................................................................................. 9

**Other**

8 C.F.R. § 214.1(d) ............................................................................................................... 13
8 C.F.R. § 214.2(f)(16) .......................................................................................................... 11
82 Fed. Reg. 7860 (Jan. 23, 2017) ........................................................................................... 6
84 Fed. Reg. 3493 (Feb. 12, 2019) .......................................................................................... 6
86 Fed. Reg. 69663 (Dec. 8, 2021) .......................................................................................... 6

By and through undersigned counsel, Defendant, Todd Lyons, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement ("ICE"), respectfully submits this memorandum in opposition to Plaintiff Akshar Patel's motion for summary judgment (ECF No. 28). As explained in more detail below and in the defendant's pending motion to dismiss, the Court lacks subject-matter jurisdiction because this matter is moot. In addition, Patel is not entitled to summary judgment as a matter of law.

## INTRODUCTION

Patel, a national of India, challenges the termination of a record maintained in the Student and Exchange Visitor Information System ("SEVIS"). Patel, mistakenly conflating the termination of the SEVIS record with a termination of his status as a nonimmigrant student ("F-1 status"), commenced this action on April 11, 2025, alleging that, because of the "SEVIS termination," he "no longer has F-1 status" and "can no longer graduate or apply for work authorization." Compl. (ECF No. 1) ¶¶ 39–32. Patel asks the Court to declare the termination of the SEVIS record unlawful, set the termination aside, and enjoin any future termination "without additional process." *Id.* at 10 (Prayer for Relief).

Prior to the filing of this lawsuit, ICE had terminated Patel's SEVIS record on April 3, 2025, based on Patel's criminal record in the National Crime Information Center ("NCIC") system. Since that time, however, several significant developments have occurred. First, ICE reinstated Patel's SEVIS record in compliance with this Court's order on Patel's motion for a temporary restraining order. Second, after that order, ICE promulgated a new policy, effective April 26, 2025, concerning the termination of SEVIS records. This new policy will govern any future SEVIS record terminations. Third, Defendants made several representations to Patel and this Court, including that ICE has no plans under its new policy to re-terminate Patel's SEVIS record based

solely on the NCIC record that led to the April 2025 termination. Finally, ICE provided Patel with a letter stating that the restoration of his SEVIS record is retroactive to the date of termination.

There is no more relief for this Court to award on the allegations in the complaint because the challenged termination has been rescinded, and Patel's SEVIS record has been reinstated with retroactive effect to the date of the earlier termination. Thus, as explained in the government's pending motion to dismiss, this case is moot. And even were the Court to reach the merits, Patel's motion for summary judgment is flawed and should be denied.

## BACKGROUND

The relevant legal and factual background is set forth in the defendant's pending motion to dismiss. Shortly after filing an opposition to the motion to dismiss (ECF No. 27), Patel moved for summary judgment (ECF No. 28). The government sought to hold the summary judgment motion in abeyance pending a resolution of the motion to dismiss (ECF No. 30). The Court denied the government's request for an abeyance and ordered the government to respond to the motion for summary judgment on or before July 21, 2025. Min Order (July 7, 2025). At the same time, the Court vacated a previously scheduled motion hearing on the defendant's motion to dismiss and instead set a status conference, which is currently scheduled for July 22, 2025, at 3:00 p.m. *Id.*; Not. of Hr'g (July 14, 2025).

## ARGUMENT

**I.    This Case is Moot.**

For the reasons set forth in the defendant's motion to dismiss (ECF No. 26), this case is now moot. To summarize: The government's actions leave no further remedy for the Court to provide, *Pub. Citizen, Inc. v. Fed. Energy Regul. Comm'n*, 92 F.4th 1124, 1128 (D.C. Cir. 2024), and show that the challenged conduct is not reasonably expected to recur and has no residual effects, *True the Vote v. IRS*, 831 F.3d 551, 561 (D.C. Cir. 2016). The government has reactivated

Patel's SEVIS record and has stated in a declaration, in a filing, and in open court that it has no plans to again terminate Patel's SEVIS record based on the information that led to the challenged termination. 2d Watson Decl. ¶ 6 (ECF No. 26-2); Def.'s Not. (ECF No. 24); Hr'g Tr. 39:10–13. Further still, ICE has promulgated a new policy providing that it will not terminate a SEVIS record based on a visa revocation absent confirmation form the Department of State that a visa record has been revoked with immediate effect (which has not happened for Patel), in which case ICE should begin removal proceedings. SEVIS Policy (ECF No. 16-1). And ICE has explicitly made the reactivation of Patel's SEVIS record retroactive, eliminating any purported residual effects. Not. to Patel (May 13, 2025) (ECF No. 26-3).

Patel's motion for summary judgment addresses mootness only briefly in the introduction. Citing no authority, Patel vaguely insists that ICE's new SEVIS policy "is just the written memorandum of ICE's illegal actions" and that "it is the ultra vires activity, not the document, that is unlawful." Mot. for Summ. J. (ECF No. 28) at 1. As an initial matter, as in his response to the motion to dismiss, Patel ignores the multiple representations by ICE that it has no plan to again terminate Patel's SEVIS record based on the reason underlying the challenged termination. *See* Reply re Mot. to Dismiss (ECF No. 29) at 2. Those assurances alone make clear that the challenged conduct is not likely to recur, and Patel's continued silence on the issue demonstrates his inability to show otherwise.

Contrary to what Patel appears to imply, the new SEVIS policy does not give rise to a reasonable expectation that the termination of Patel's SEVIS record will recur. Under the policy, ICE may terminate a SEVIS record when the Department of State, after considering "derogatory information provided by ICE," "revokes an alien's visa with immediate effect," in which case ICE "should take steps to initiate removal proceedings." SEVIS Not. (Apr. 26, 2025) (ECF No. 16-1).

3

Because Patel's visa was never revoked in any way by the State Department, there is no reasonable expectation that his SEVIS record will be terminated on this basis. This, in addition to the explicit assurances by ICE that the agency will not terminate the SEVIS record again based on the pre-existing record within NCIC clearly demonstrate that the challenged conduct is not likely to recur, and this case is moot.

## II.     The Privacy Act Forbids the Requested Relief.

Even were the case not moot, Patel's motion for summary judgment would fail on the merits because the Privacy Act precludes his attempt to seek relief under the APA. Though the APA generally waives the government's immunity, it also "preserves 'other limitations on judicial review' and does not 'confer[] authority to grant relief if any other statute . . . expressly or impliedly forbids the relief which is sought.'" *Cohen v. United States*, 650 F.3d 717, 724–25 (D.C. Cir. 2011) (quoting 5 U.S.C. § 702) (citing *Schnapper v. Foley*, 667 F.2d 102, 108 (D.C. Cir. 1981) (concluding the government's immunity remains intact when "another statute expressly or implicitly forecloses injunctive [or declaratory] relief"))*; see Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012) ("[Section 702] prevents plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes."). "'[W]hen Congress has dealt in particularity with a claim and [has] intended a specified remedy'—including its exceptions—to be exclusive, that is the end of the matter; the APA does not undo the judgment." *Match-E-Be-Nash-She-Wish Band*, 567 U.S. at 216 (quoting *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 286 n.22 (1983)); *see Block*, 461 U.S. at 287 ("A necessary corollary of this rule [that the United States cannot be sued without the consent of Congress] is that when Congress attaches conditions to legislation waiving the sovereign immunity of the United States, those conditions must be strictly observed, and exceptions thereto are not to be lightly implied.").

The Privacy Act of 1974, Pub Law No. 93-579, 88 Stat 1896 (Dec. 31, 1974), codified at 5 U.S.C. § 552a, provides for the type of remedy Patel seeks here but forbids Patel from seeking it. The Act establishes practices for federal agencies regarding the collection, maintenance, use, and dissemination of information about individuals within systems of records. *See* Pub. L. 93-579, § 2, Dec. 31, 1974, 88 Stat. 1896 (codified at 5 U.S.C. § 552a (notes)). The Act gives agencies detailed instructions for managing their records and provides for various sorts of civil relief to individuals aggrieved by the Government's purported compliance failures. 5 U.S.C. § 552a. A system of records is defined as a group of records under the control of an agency from which information is retrieved by the name of the individual or by some identifier assigned to the individual. *Id.* § 552a(a)(5). The Act sets forth agency record-keeping requirements, places restrictions on disclosure of information, and provides a means for individuals to access their records and seek correction of inaccurate information in those records. *Id.* §§ 552a(b)–(d).

Relevant here, § 552a(d) addresses how an individual may access agency records, seek amendment to those records, exhaust administrative remedies prior to seeking judicial redress, and file a statement of disagreement to be included with the records. *Id.* § 552a(d)(1)–(4). After following the required steps to exhaust administrative remedies, a final determination by the agency head triggers the civil remedy provisions of § 552a(g)(1)(A). *Id.* § 552a(d)(3). The district courts have jurisdiction over any action brought pursuant to the civil remedy provisions of subsection (g) including an action to correct a record. *Id.* § 552a(g)(1). In an action to correct a record, the court can order the agency to make the correction and can assess costs and fees against the United States if the complainant substantially prevails. *Id.* § 552a(g)(2). Actions may also be brought to compel access to a record or for damages in certain instances. *Id.* §§ 552a(g)(1)(B), (g)(1)(C), (g)(1)(D).

Patel seeks the type of relief provided by the Privacy Act. His SEVIS record resides in a system of records subject to the Privacy Act. *See* DHS/ICE–001 Student and Exchange Visitor Information System (SEVIS) System of Records. 86 Fed. Reg. 69663 (Dec. 8, 2021) ("DHS/ICE uses, collects, and maintains information on nonimmigrant students and exchange visitors, and their dependents, admitted to the United States under an F, M, or J class of admission, and the schools and exchange visitor program sponsors that host these individuals in the United States."). And Patel requests judicial review over what he claims to be an inaccurate termination reflected in his SEVIS record. As explained below, the termination of Patel's SEVIS record had no effect on his status. Thus, the relief sought by Patel boils down simply to an amendment to his record in SEVIS to show that it is not terminated, relief that would generally be available under the Privacy Act.

The Privacy Act, however, precludes Patel from seeking a correction to his SEVIS record because he is a foreign national. The Privacy Act limits remedies to any individual who is "a citizen of the United States or an alien lawfully admitted for permanent residence." 5 U.S.C. § 552a(a)(2). In a subsequent 2016 amendment under the Judicial Redress Act, Congress extended certain Privacy Act remedies to citizens of designated countries and granted venue for such challenges to the U.S. District Court for the District of Columbia. 5 U.S.C. § 552a (statutory note), Pub. L. 114-126 (Feb. 24, 2016), 130 Stat. 282. The countries that have been designated pursuant to that amendment are the United Kingdom and majority of the countries of the European Union. 82 Fed. Reg. 7860–61 (Jan. 23, 2017); 84 Fed. Reg. 3493–94 (Feb. 12, 2019). India, where Patel is from, has not been designated. As such, the Privacy Act precludes judicial review of Patel's claims. *See* 5 U.S.C. § 552a(a)(2); 5 U.S.C. § 704(a)(1); *Durrani v. U.S. Citizenship & Immigr. Servs.*, 596 F. Supp. 2d 24, 28 (D.D.C. 2009); *Cudzich v. INS*, 886 F. Supp. 101, 105 (D.D.C. 1995); *Raven v.*

6

*Panama Canal Co.*, 583 F.2d 169, 171 (5th Cir. 1978) ("[I]t would be error for this Court to allow plaintiff, a Panamanian citizen, to assert a claim under the Privacy Act.").

Because the Privacy Act forbids relief, so too does the APA. 5 U.S.C. § 702. In a similar context, the D.C. Circuit squarely held that the Privacy Act is an "adequate remedial mechanism[]" that precludes a *Bivens* action by an individual challenging her debarment. *Liff v. Off. of Inspector Gen.*, 881 F.3d 912, 917–18, 921–24 (D.C. Cir. 2018). That is so, the D.C. Circuit explained, even if "the Privacy Act does not provide a complete remedy for the injury [the plaintiff] alleges" because the plaintiff "could not challenge [the] debarment under the Privacy Act" and the records at issue are not records "to which the Privacy Act applies" at all. *Id.* at 923. That is because "[t]he Privacy Act represents Congress's legislative judgment about the appropriate remedies with respect to the accuracy, fairness, and use of government information, and the judicial system is not in a position to revise that scheme by recognizing an additional constitutional remedy for that kind of claim." *Id.* While *Liff* addressed a *Bivens* claim rather than an APA claim, its reasoning applies with equal force in the APA context given the similarity of the *Bivens* doctrine's "adequate remedial mechanisms" inquiry, *id.* at 918, to the APA's "other adequate remedies" bar, 5 U.S.C. § 704; *see also Thomas v. Fed. Aviation Admin.*, Civ. A. No. 05-2391 (CKK), 2007 WL 219988, at *3 (D.D.C. Jan. 25, 2007) (equating *Bivens* doctrine's adequate remedy bar with APA's adequate remedy bar); *M Nicolas Enters., LLC v. United States*, No. 20-691C, 2022 WL 558043, at *3 (Fed. Cl. Feb. 23, 2022) ("As with APA claims, *Bivens* claims are unavailable where alternative remedies exist.").

Patel's motion for summary judgment hardly engages with this point. He disputes neither that he seeks the correction of a record in a system of records, nor that, as a citizen of India and not the United States, he is excluded from the Privacy Act's remedial scheme. Instead, Patel simply

7

acknowledges that the Privacy Act forbids him from seeking a record correction because he is a foreign national. Mot. for Summ. J. (ECF No. 16) at 4. But Patel fails to grapple with the consequences of that admitted statutory bar in the Privacy Act as it relates to the APA's exclusion of relief thereunder where "any other statute . . . expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. Because, as Patel acknowledges, the Privacy Act "forbids the relief" Patel seeks, 5 U.S.C. § 702, he may not use the APA as an end run around the Privacy Act's limitations.

### III.     Patel's Arbitrary-and-Capricious Claim Fails.

Patel argues that the termination of his SEVIS record is arbitrary and capricious in violation of the APA. Mot. for Summ. J. (ECF No. 28) at 4, 6. This argument fails for several reasons. First, as discussed above, APA relief is precluded by the Privacy Act. Second, Patel's argument is largely based on a nonexistent final agency action. Agency action must be "final" to be reviewable under the APA. 5 U.S.C. § 704. Agency action is final only if (1) it marks "the consummation of the agency's decisionmaking process" and (2) is "one by which rights or obligations have been determined, or from which legal consequences flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations omitted). Patel insists that ICE arbitrarily terminated not only his record in the SEVIS system, but also, much more crucially, his F-1 status. Yet no termination of status occurred. Watson Decl. (ECF No. 7-1) ¶ 12 (noting termination of a SEVIS record is not termination of nonimmigrant status). As such, to the extent that Patel purports to challenge a termination of his F-1 status, he fails to identify a final agency action.

Patel insists, without citing any authority, that the termination of his SEVIS record "immediately deprived Mr. Patel of his . . . nonimmigrant status." Mot. for Summ. J. (ECF No. 28) at 3. But the government has made clear that this bald assertion is simply not correct: "Terminating a record in SEVIS does not terminate an individual's nonimmigrant status in the United States." Watson Decl. ¶ 12 (ECF No. 7-1). ICE's website on the SEVIS system also makes

8

this clear. To be sure, as the website notes, a terminated SEVIS record "*could* indicate" that the nonimmigrant "no longer maintains F . . . status." DHS, SEVIS, Terminate a Student, https://perma.cc/ECM2-L3RY (pinned June 9, 2025) (emphasis added). But equating a terminated record with terminated status, as Patel does, commits the fallacy of equating possibility with actuality. Moreover, the website goes on to state, clearly, that the termination of a SEVIS record is "not always negative" and that even nongovernmental school officials—who obviously have no authority to revoke status—may terminate a SEVIS record for "normal, administrative reasons." *Id.* Patel's attempt to equate his SEVIS record with his status is therefore unsuccessful, and his claim that ICE arbitrarily terminated his status relies on a faulty premise.

Even assuming Patel could identify a final agency action, his arbitrary and capricious argument nevertheless founders. Patel contends that ICE's termination of his SEVIS record" fails to provide any explanation." Mot. for Summ. J. (ECF No. 28) at 4–5. But the record contradicts that assertion. As reflected in the Watson declaration and the administrative record, ICE terminated Patel's SEVIS record because his name was a verified match to a criminal record, and the Department of State requested that his SEVIS record be terminated. Watson Decl. ¶¶ 7–8 (ECF No. 7-1). This was intended to serve as an investigatory "red flag" to determine whether Patel remained compliant with his status requirements. Hr'g Tr. at 28: 23–29:1; 31:24–32:2

Patel primarily argues that the termination of his SEVIS record was arbitrary because he "has no criminal history." Mot. for Summ. J. (ECF No. 28) at 4. That is incorrect. On November 2, 2018, Patel was arrested in Montgomery County, Texas on a reckless driving charge under § 545.401 of the Texas Transportation Code, Watson Decl. ¶ 7 (ECF No. 7-1), which is a misdemeanor committed when a person "drives a vehicle in willful or wanton disregard for the safety of persons or property," Tex. Transp. Code § 545.401(a). According to the documents

9

submitted by Patel, the district attorney moved to dismiss the charge, not for an inability to prove it or for lack of evidence, but because Patel "completed terms," most likely of a plea agreement or diversion program. *See* App'x to Mot. for Prelim. Inj. (ECF No. 12-1 at 6). But the fact that the charges against Patel were dismissed erases neither the fact nor the record that those charges were brought and dismissed upon his satisfaction of conditions. Patel's insistence that he has "no criminal history" is therefore simply incorrect.

Patel is also incorrect to assert that ICE took "no individualized consideration" of the "actual facts" applicable to him. Mot. for Summ. J. (ECF No. 28) at 5. The information that ICE conveyed to the Department of State specifically notes the charges against Patel and the fact that they were dismissed by the prosecutor. Admin. Rec. (ECF No. 17 at 21) at AR018. After receiving that individualized information, the Department of State requested that the SEVIS record be terminated, which ICE effectuated.

## IV.  ICE Did Not Violate Due Process.

Patel also argues that ICE's termination of his SEVIS record violates due process. "For a Plaintiff to establish a procedural due process claim, it must show that: (1) it has a protected interest, (2) the government deprived it of this interest, and (3) the deprivation occurred without proper procedural protections." *Cmty. Fin. Servs. Ass'n of Am. v. FDIC*, 132 F. Supp. 3d 98, 122 (D.D.C. 2015) (citing *Indus. Safety Equip. Ass'n, Inc. v. EPA*, 837 F.2d 1115, 1122 (D.C. Cir. 1988)).

Patel has no property interest in his SEVIS record. *See Yunsong Zhao v. Va. Polytechnic Inst. & State Univ.*, Civ. A. No. 18-0189, 2018 WL 5018487, at *6 (W.D. Va. Oct. 16, 2018) (holding that Plaintiff did not have an property interest in his SEVIS status that would implicate due process); *Bakhtiari v. Beyer*, Civ. A. No. 06-1489, 2008 WL 3200820, at *3 (E.D. Mo. Aug. 6, 2008) (holding that SEVIS regulations and their enabling legislation do not indicate a

congressional intent to confer a benefit on nonimmigrant students).[1] This is because, as shown above, the SEVIS system is simply an administrative tool that does not affect the lawfulness of someone's nonimmigrant status. *See* Watson Decl. ¶ 12 (ECF No. 7-1); *see also Yunsong Zhao*, 2018 WL 5018487, at *4–5. *Deore v. Sec'y of DHS*, Civ. A. No. 25-11038, ECF No. 20, slip op. at 7–8, 12–13 (E.D. Mich. Apr. 17, 2025) (finding no likelihood of success on due process claim because "the Court cannot conclude based on the current record whether it is likely that any of the students have lost their F-1 status or have lost any legal rights based solely on the termination of their SEVIS record"). As such, Patel's due process claims fail.

Even if there were such a protected interest, the processes afforded to Patel would satisfy the Fifth Amendment. *See Mathews v. Eldridge*, 424 U.S. 319, 339–40 (1976); *cf. Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("[W]e hold that an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available. For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy."). This is because the review procedures available to Patel (in the event Patel had lost his lawful nonimmigrant F-1 status) would allow him to seek reinstatement administratively from U.S. Citizenship and Immigration Services. 8 C.F.R. § 214.2(f)(16). And even if there were a reason to believe that Patel was likely to be placed into removal proceedings, the procedures available to Patel in immigration court comply with the Fifth Amendment. *See* 8 U.S.C. § 1229a; *see also id.* § 1201(i) (allowing the review of a visa revocation "in the context

---

[1] Similarly, "[t]here is no constitutionally protected interest in either obtaining or continuing to possess a visa." *Louhghalam v. Trump*, 230 F. Supp. 3d 26, 35 (D. Mass. 2017) (collecting cases).

of a removal proceeding if such revocation provides the sole ground for removal under section 1227(a)(1)(B) of this title.").

Patel's argument to the contrary is based on a misstatement of fact. He asserts, without citation to evidence, that the termination of his SEVIS record came when he was "engaged actively in a practical training program where she [sic] is working for a potential employer" and that the termination of Patel's SEVIS record meant that "she [sic] can no longer work." Mot. for Summ. J. (ECF No. 28) at 7–8. None of that is true. At the time Patel's SEVIS record was terminated, he was attending classes and was not doing optional practical training. Patel Decl. (ECF No. 2-3) ¶¶ 8–9. And given that ICE has restored Patel's record, made it retroactive, stated that it has no plans to again terminate the record based on the same information, and enacted a new policy requiring a verified revocation of a visa by State before a SEVIS record may be terminated on that basis, Patel's professed concern about the ongoing "risk of erroneous deprivation" rings hollow. *See* Mot. for Summ. J. (ECF No. 28) at 8.

V.    **Patel's Ultra Vires Argument Fails.**

Finally, Patel's ultra vires argument lacks merit. Ultra vires review is "a doctrine of last resort," *Schroer v. Billington*, 525 F. Supp. 2d 58, 65 (D.D.C. 2007), and the equivalent of "a Hail Mary pass—and in court as in football, the attempt rarely succeeds." *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009); *see Trudeau*, 456 F.3d at 178. A plaintiff may seek *ultra vires* review only when: "(i) the statutory preclusion of review is implied rather than express, (ii) there is no alternative procedure for review of the statutory claim; and (iii) the agency plainly acts 'in excess of its delegated powers and contrary to a specific prohibition in the' statute that is 'clear and mandatory.'" *Nyunt*, 589 F.3d at 449 (quoting *Leedom v. Kyne*, 358 U.S. 184, 188 (1958); citing *Bd. Of Governors of the Fed. Res. v. MCorp Fin., Inc.*, 502 U.S. 32, 44; *McBryde v. Comm. to Review Circuit Council Conduct & Disability Orders of the Judicial*

12

*Conference of the U.S.,* 264 F.3d 52, 63-64 (D.C. Cir. 2001); *Nat'l Air Traffic Controllers Ass'n AFL-CIO v. Fed. Serv. Impasses Panel*, 437 F.3d 1256, 1263-64 (D.C. Cir. 2006)).

Foremost, Patel cannot allege an ultra vires claim if the APA is applicable. *See MCorp Fin., Inc.*, 502 U.S. at 43-44 (citing *Leedom*, 358 U.S. at 188) (concluding review under an independent *ultra vires* cause of action is available only where the plaintiff would otherwise be "wholly depriv[ed]" of a "meaningful and adequate means of vindicating its statutory rights"). Here, Patel argues that the APA is applicable and therefore contradicts his own ultra vires claim. Moreover, even if the Court would permit an ultra vires claim, this claim would nevertheless fail because Patel's sole basis for his ultra vires claim is that ICE failed to comply with its regulation pertaining to terminating F-1 status, *i.e.*, 8 C.F.R. § 214.1(d). *See* Mot. for Summ. J. (ECF No. 28) at 5. As the D.C. Circuit recently noted, however, "none of [its] decisions have placed an agency's failure to follow its own regulations in the 'ultra vires' category[.]" *Postal Police Officers Ass'n v. United States Postal Serv.*, 502 F. Supp. 3d 411, 422 (D.D.C. 2020) (citing *Eagle Trust Fund v. U.S. Postal Serv.*, 811 F. App'x 669, 670 (D.C. Cir. 2020)).

Further, Patel wrongly equates the agency's action here—the modification of his SEVIS record—with the termination of her F-1 status. But the cited regulation pertains to the termination of status, and ICE has not taken any action to terminate Patel's nonimmigrant status, which requires: (1) "the revocation of a waiver authorized on his or her behalf under section 212(d) (3) or (4) of the Act;" (2) "the introduction of a private bill to confer permanent resident status on such alien;" or, (3) "notification in the Federal Register, on the basis of national security, diplomatic, or public safety reasons." 8 C.F.R. § 214.1(d). Additionally, ICE has not instituted any action to remove her from the United States, which could only occur after the institution of removal proceedings and an opportunity to appear before an immigration judge. 8 U.S.C. § 1229a. Finally,

Patel's naked assertion that ICE lacks statutory authority to terminate a SEVIS record is plainly wrong.

## **CONCLUSION**

For the reasons stated above, the Court should deny the plaintiff's motion for summary judgment and dismiss this case as moot.

Dated: July 21, 2025
      Washington, DC

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

BRIAN P. HUDAK, D.C. Bar #90034769
Chief, Civil Division

By:       */s/ Johnny Walker*
JOHNNY H. WALKER, III, D.C. Bar 991325
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2511

*Attorneys for the United States of America*