IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Akshar Patel, | ) | C/A No.: 1:25-cv-1096-ACR |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Todd M. Lyons, Acting Director, U.S. | ) | |
| Immigration and Customs Enforcement, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## **MOTION FOR ATTORNEY'S FEES**

Defendant ("ICE") illegally terminated Plaintiff Akshar Patel's ("Mr. Patel")

nonimmigrant status with not notice, no legal basis, and no remorse. It refused to compromise at

any point during this litigation, leaving its own attorneys unable to answer basic questions about

ICE's factual and legal position. Nevertheless, Mr. Patel and his counsel efficiently and

effectively litigated this complex case to a complete victory. Sovereign immunity precludes Mr.

Patel from recovering damages for the harm ICE caused. But the Equal Access to Judgment Act

("EAJA") permits him to seek reasonable attorneys' fees and costs for his case. For the reasons

below, this Court should grant this motion.

### **ARGUMENT**

Mr. Patel is entitled to reasonable attorneys' fees under EAJA. EAJA provides:

> Except as otherwise specifically provided by statute, a court shall award to a
> prevailing party other than the United States fees and other expenses . . . incurred
> by that party in any civil action . . . brought by or against the United States . . . unless
> the court finds that the position of the United States was substantially justified or
> that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). The eligibility requirements for an award of fees under the EAJA are

(1) that the claimant is a prevailing party; (2) that the government's position was

not substantially justified; and (3) that no special circumstances make an award unjust.  For the reasons below, this Court should award Mr. Patel reasonable attorneys' fees and costs.

## I.      Mr. Patel is a prevailing party.

Mr. Patel is a prevailing party. EAJA is an exception to the traditional "American Rule," which requires the parties to litigation bear their own respective costs. *See Buckhannon Board & Care Home v. W.V. Dep't of Health and Human Res.*, 532 U.S. 598, 602 (2001). To qualify for this exception, *inter alia*, a plaintiff must be a "prevailing party," defined as "one who has been awarded some relief by the court." *See Buckhannon*, 532 U.S. at 603. "[T]o be considered a prevailing party, a plaintiff must not only achieve some material alteration of the legal relationship of the parties, but the change must also be judicially sanctioned. *Ma*, 547 F.3d at 344 (quoting *Buckhannon*, 532 U.S. at 604) (internal quotation marks omitted). Here, Mr. Patel won summary judgment. ECF No 40. Parties who win summary judgment qualify as "prevailing parties" under EAJA. *GasPlus, L.L.C. v. U.S. Dep't of Interior*, 593 F. Supp. 2d 80, 85 (D.D.C. 2009). Thus, Mr. Patel is a prevailing party.

## II.     ICE's position was substantially unjustified.

ICE's position was not substantially justified. EAJA authorizes an award of fees to the prevailing party unless the other party's legal position was "substantially justified." 28 U.S.C. § 2412(d)(1)(A). The government must be "substantially justified" in both its litigating position in court and "the action . . . by the agency upon which the civil action is based." 28 U.S.C. § 2412(d)(2)(D). The government bears the burden to show that its position was "justified to a degree that could satisfy a reasonable person or otherwise having a reasonable basis both in law and fact." *Taucher v. Brown-Hruska*, 396 F.3d 1168, 1172 (D.C. Cir. 2005) (internal citations and quotations omitted). "The hallmark of the substantial justification test is reasonableness."

*Pursuing Am.'s Greatness v. Fed. Election Comm'n*, 463 F. Supp. 3d 11, 16 (D.D.C. 2020). But

"the government need not establish that it was correct." *Air Transp. Ass'n of Can. v. FAA*, 156

F.3d 1329, 1332 (D.C. Cir. 1998).  In determining whether a position was substantially justified,

courts must "analyze why the government's position failed in court." *Id.* But the court must

"guard against being 'subtly influenced by the familiar shortcomings of hindsight judgment.'"

Taucher, 396 F.3d at 1173 (quoting *Beck v. Ohio*, 379 U.S. 89, 96 (1964)).

ICE's position was not substantially justified. First, ICE repeatedly argued that the

Privacy Act precluded jurisdiction over Mr. Patel's claims, ECF No. 7 at 6-8, despite the Privacy

Act expressly not applying to nonimmigrants. ECF No. 39 at 12 ("Only U.S. citizens, lawful

permanent residents, and citizens of certain designated countries may sue under the Act."). This

argument lacked any basis in law or fact. Despite losing this argument at the emergency motion

stage, ICE again argued it in its motion to dismiss and summary judgment briefing. ECF No. 42

at 17. And this Court expressly rejected it in its summary judgment order. ECF No. 39 at 12.

This argument was not reasonable because the Privacy Act is irrelevant to nonimmigrants like

Mr. Patel.

Second, ICE's claim that the SEVIS termination did not harm Mr. Patel had no basis in

law or fact. As noted in this Court's summary judgment decision, "Terminating a foreign

student's SEVIS record obligates the individual to discontinue his education and leave the

country post haste." ECF No. 39 at 2. Further, ICE and other agencies consistently represented to

international students that SEVIS status was coterminous with F1 status, and the loss of SEVIS

status is the loss of immigration status. *Id.* Tellingly, ICE's own counsel had no responses at oral

argument to defend this position. ECF No. 18 at 27-29. It appears ICE's claim that SEVIS

3

terminations had no negative impact on students was a pure litigation position with no support in fact or law. Therefore, it was not substantially justified.

Finally, ICE's eventual position that its April 25, 2025, policy mooted this case similarly lacked any justification in fact or law because its April 25, 2025, policy purportedly *expanded* ICE's ability to terminate SEVIS, rather than limiting it to ICE's own apposite regulations. ECF No. 39 at 15.

ICE's position was never and remains substantially justified, which is further reflected in the consistent judicial repudiation of ICE's attempt to deprive international students like Mr. Patel of their immigration status. *See, e.g., Doe v. Trump*, — F. Supp. 3d —, 2025 WL1467543 (N.D. Cal. May 22, 2025); *Du v. U.S. Dep't of Homeland Security*, No. 3:25-cv-644, 2025 WL 1549098, *5-7. (D. Conn. May 31, 2025); *Roe v. Noem*, 25-cv-40, 2025 WL 1382930, at *3-4 (D. Mont. May 13, 2025) (same); *Ortega Gonzalez v. Noem*, No. 6:25-cv-632, 2025 WL 1355272 (D. Or. May 9, 2025) (same); *Doe #1 v. Trump*, No. 25-cv-4188, 2025 WL 1341711, *6-*7 (N.D. Ill. May 8, 2025) (same); *Vyas v. Noem*, No. 3:25-cv-0261, 2025 WL 1351537, at *6-*7 (S.D.W.V. May 8, 2025) (same); *Madan B.K. v. Noem*, No. 1:25-cv-419, 2025 WL 1318417, *8-*9 (W.D. Mich. May 7, 2025) (same); *Doe 1 v. Bondi*, No. 1:25-cv-1998, 2025 WL 1482733, at *10-*11 (N.D. Ga. May 2, 2025) (same); *Para Rodriguez v. Noem*, No. 3:25-cv-616, 2025 WL 1284722, at *9-*10 (D. Conn. May 1, 2025) (same); *Doe No. 1 v. Noem*, No. 25-cv-1962, 2025 WL 1224783, *7 (E.D. Pa. Apr. 28, 2025) (same).

III.    **No special circumstances preclude an award.**

The Special Circumstances provision of the EAJA is designed to serve as a safety valve. As the legislative history of the EAJA confirms, "'[t]his 'safety' valve helps to ensure that the Government is not deterred from advancing in good faith the novel but credible extensions and

4

interpretations of law that often underlie vigorous enforcement efforts. It also gives the court discretion to deny awards where equitable considerations dictate an award should not be made.'" *Nken v. Holder*, No. 08-1813, 385 Fed. Appx. 299, 302 (4th Cir. June 24, 2010) (quoting H.R. Rep. No. 96-1418, at 11 (1980)). No special circumstances preclude an award of fees to Mr. Patel.

**IV.     Mr. Patel is entitled to an enhanced hourly rate.**

Mr. Patel is entitled to an enhanced hourly fee under the Fitzpatrick Matrix for Attorney Banias and Attorney Brown due to various special factors. Under § 2412(d)(2)(A), "fees and other expenses" that may be awarded to a prevailing party in a civil action against the government must be "reasonable." 28 U.S.C. § 2412(d)(2)(A)(ii) (internal quotation marks omitted). The statute also provides a maximum hourly rate that can be awarded. Specifically, Congress provided that:

> the amount of fees awarded . . . shall be based upon prevailing market rates for the kind and quality of the services furnished, *except* that . . . attorney fees shall not be awarded in excess of $ 125 per hour unless the court determines *that an increase in the cost of living or a special factor,* such as the limited availability of qualified attorneys for the proceedings involved, *justifies a higher fee*.

*Id.* (emphasis added). To qualify for the latter enhancement, the prevailing party must demonstrate that their "attorneys had some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation." *Hyatt v. Barnhart*, 315 F.3d 239, 249 (4th Cir. 2002).

To determine whether to grant fees that exceed the standard EAJA rate, the plaintiff must show that a "special factor" exists by demonstrating:

> (1) the attorney has "distinctive knowledge or specialized skill"; (2) the knowledge and skills were "needful for the litigation in question—as opposed to an

extraordinary level of general lawyerly knowledge and ability useful in all litigation"; and (3) there was a "limited availability of qualified attorneys for the proceedings involved" meaning that the party seeking fees could not have obtained the knowledge and skills at the EAJA rate.

*Zhang v. United States Citizenship & Immigr. Servs.*, 350 F.R.D. 577, 591 (D.D.C. 2025).

Plaintiffs' counsel satisfy these elements. First, most courts recognize the confluence of immigration law and federal practice as a specialized skill: "[D]istinctive knowledge and specialized skill in immigration law and litigation" may qualify as distinctive knowledge or a specialized skill for an enhanced rate. *See, e.g., Berardo v. United States Citizenship & Immigration Servs.*, No. 3:19-cv-01796-SB, 2021 U.S. Dist. LEXIS 12283, at *10 (D. Or. Jan. 22, 2021); *see, e.g., Xiaosi Hu v. Munita,* No. 2:19-cv-01302-RAJ, 2020 U.S. Dist. LEXIS 80006, at *4 (W.D. Wash. May 6, 2020); *Catholic Soc. Servs. v. Napolitano*, 837 F. Supp. 2d 1059, 1075 (E.D. Cal. 2011); *Abdur-Rahman v. Napolitano*, 868 F. Supp. 2d 1158, 1163 (W.D. Wash. 2012). However, a judge in this Court recently held that the combination of immigration law and federal litigation is insufficient to qualify as distinctive knowledge or specialized skill. *Zhang*, 350 F.R.D. at 592. But this case is distinguishable.

In addition to specialized knowledge of the labyrinthine regulations that govern international students in the federal court litigation context, Attorneys Brown and Banias have specialized skill in targeting immigration policies, designing strategies to challenge them, and executing them at scale inside and outside of this district. *See, e.g., ITServe Alliance v. Cissna*, 443 F. Supp. 3d 14 (D.D.C. 2020) (overturning an unlawful immigration policy for H1B visas (Banias)); *N. Rockies Reg'l Ctr., LLC v. Jaddou*, 743 F. Supp. 3d 1195 (D. Mont. 2024) (overturning an unlawful immigration policy for EB5 (Banias)); *Shergill v. Mayorkas*, 2:21-cv-01296-RSM (W.D. Wash. Nov. 2021) (acquiring settlement to provide work authorization to derivatives for L and E visas (Brown and Banias)); *Edakunni v. Mayorkas,* No. 2:21-cv-393 (W.D.

Wash. Jan. 2023) (acquiring settlement to require contemporaneous adjudication of H1B and H4 applications (Brown)).

Further, this case required the specialized skill to mobilize quickly. Mr. Patel's SEVIS was terminated on April 4, 2025. ECF No. 56 at 6. Plaintiff's counsel filed this complaint and emergency motion one week later on April 11, 2025. ECF No. 1. This was one of the first cases challenging SEVIS terminations in the country. It is indeed a distinctive set of skills to not only review the immigration and administrative law principles necessary to bring such a case, but to do so in an emergency setting, especially where the rest of the immigration bar was seeking administrative remedies through ICE, such as "reinstatement." *See* AILA Practice Alert (attached as Ex. A). Notably, during pendency of this lawsuit, there were known instances of individuals applying for reinstatement of their SEVIS, and they were summarily rejected by SEVP immediately. This distinguishes Banias and Brown from the case in *Zhang*. Banias and Brown have distinct knowledge and specialized skills to identify, design, and execute strategies to overturn immigration policies, which the immigration bar does not see or pursue—at least until Banias and Brown demonstrated litigation successes.

Finally, Banias and Brown do this in a way that is cost effective for the client. During this case, Mr. Patel is a student. Students are not known for significant financial resources. Thus, Banias and Brown devised a low-bono approach to financing this litigation, which again takes distinctive skill and specialized skill. This is again a far cry from the recent decision in *Zhang* where the plaintiffs' net worths had to be tested to ensure they were not too wealthy to qualify under EAJA. *Zhang,* 350 F.R.D. at 591. This is another limitation that Banias and Brown have distinctive skill in overcoming to ensure litigation can be offered to those who need it, not simply those who can afford it. As such, they satisfy the first prong of *Pierce*.

Second, this case required attorneys with such specialized skills. Attorneys with specialized skills were necessary because ICE's actions here were unprecedented. ICE testified that it terminated approximately 6 to 10 SEVIS records in 2024, only to terminate more than 6,400 in 2025. Unprecedented actions require attorneys with the distinctive knowledge to find new legal solutions for a new problem. Banias and Brown have distinct skills necessary to identify the issue, do the legal research, design a litigation strategy, and execute it in a cost-effective way. Such skills are not required in all cases. But these skills were required by this case.

Third, at the time Banias and Brown brought this case, the immigration bar believed applying for reinstatement—a purely discretionary remedy—was the only option available. *See* AILA Practice Alert at 1-2. After this Court acted, other attorneys got involved around the country, relying on the arguments and information that was derived in these cases. Further, Banias and Brown's low bono approach was absolutely necessary in this case, which further demonstrates that the attorneys were not available at the EAJA statutory rate of $125 an hour.

Finally, to support the special factor analysis, it should be noted that Banias and Brown have unique backgrounds. Banias has a unique background and training that qualify him for an enhancement. Banias Resume (attached as Ex. B). First, in addition to his *juris doctor*, Mr. Banias acquired an LL.M. degree from Columbia Law School, where he focused his studies on the confluence of immigration law and federal courts. During his more focused studies, he published a paper on a topic in that discipline related to challenges to indefinite mandatory detention for foreign nationals in removal proceedings. *Id.*

After his time in New York, Mr. Banias worked with the Civil Division in the United States Department of Justice's Office of Immigration Litigation – District Court Section. During his three years at main Justice, Mr. Banias trained under the top federal court immigration

litigators in the country and litigated in federal district and circuit courts throughout the United States. In the fall of 2013, when he left main justice, Mr. Banias became one of the first to leave that office—that office only started in February 2008—and began to litigate in this context for private clients.

From 2013 to today, Mr. Banias is one of the most prolific federal court immigration litigators in the United States.  A quick review of the exemplar cases on his resume demonstrates his impact in this context. *Id.* All of these cases focus on federal court immigration litigation.  Mr. Banias is a regular speaker on the topic of federal court immigration litigation throughout the United States. *Id.* On June 9, 2020, the American Immigration Lawyers Association awarded Mr. Banias's firm with the 2020 Jack Wasserman Memorial Award for federal court immigration litigation. *See* https://www.aila.org/about/annual-awards#wasserman (last visited March 27, 2026). This is a national award from the most largest immigration trade group in the United States.  Simply said, Mr. Banias has formal, specialized education, unique experience, and a focused, niche practice in this field. He is the type of attorney congress intended to receive an enhanced fee.

Similarly, Brown is a partner at a major employment-based immigration firm in the country. Brown Resume (attached as Ex. C). In this capacity, he is on the cutting edge of using federal court litigation to serve his petition clients. Because of his specialized abilities, he is a frequent speaker at immigration and human resources conferences. Brown has played a major part in litigation related to the H1B and H4 nonimmigrants, playing an instrumental role in two major settlements in 2021.  *Shergill v. Mayorkas*, 2:21-cv-01296-RSM (W.D. Wash. Nov. 2021) (acquiring settlement to provide work authorization to derivatives for L and E visas (Brown and Banias)); *Edakunni v. Mayorkas,* No. 2:21-cv-393 (W.D. Wash. Jan. 2023) (acquiring settlement

to require contemporaneous adjudication of H1B and H4 applications (Brown)). In light of these victories, Mr. Brown is a member of AILA's Benefits Litigation Committee, which decides which issues and cases the nonprofit will pursue in litigation. Mr. Brown is the kind of attorney Congress had in mind when it permitted enhanced fees.

Under the Fitzpatrick matrix, the proper enhanced fee for Banias would be $829 an hour as an attorney with 18 years of experience. And the proper enhanced fee for Mr. Brown would be $707 an hour as an attorney with 9 years of experience. *See* The Fitzpatrick Matrix (available at https://www.justice.gov/usao-dc/media/1395096/dl?inline (last visited March 27, 2026)).

To the extent this Court finds enhanced fees are no due, this Court should increase the hourly rate by the cost of living. *Mitchum v. Ashtrue,* 586 F. Supp. 2d 424, 426 (D.S.C. 2007) (describing the formula for the cost of living increase).  At a minimum, this Court should award the attorneys a cost-of-living increase to at least $257.54. Based on the relevant formula using current numbers, the Plaintiff seeks at least $257.54 for all attorney hours. Plaintiff arrives at this amount by multiplying $125.00 per hour times the ratio of 320.795/155.7. This equals a cost-of-living increase to $257.54 per hour. *See, e.g., Mitchum*, 586 F. Supp. 2d at 426. The 155.7 figure reflects the CPI-U at the time of the $125 figure in EAJA, and the 320.795 figure is from the CPI-U from April 2025, when a majority of the work in this case was completed. *See BLS News Release*, July 2021 Consumer Price Index (available at https://www.bls.gov/news.release/archives/cpi_01132026.htm (last visited March 27, 2026)). As such, this Court should at a minimum increase the hourly fee to $257.54.

## V.   Plaintiffs are entitled to a fee award of $102,605.

The broad definition of "fees and other expenses" in the EAJA indicates, without much doubt, that Congress intended to award a wide range of fees and expenses to the prevailing party

10

in litigation with the government, unless one of the exceptions applies. Thus, the EAJA

authorizes the reimbursement of fees for persons conducting studies, doing analyses, or

issuing reports, as well as for attorneys' fees. And consistent with this manifested intent, we have

held that the statute's authorization for reimbursement of attorneys' fees includes authorization

for reimbursement for work performed not only by attorneys but also by persons doing "tasks

traditionally performed by an attorney and for which the attorney would customarily charge the

client," regardless of whether a licensed attorney, paralegal, or law clerk performed them. *Hyatt*

*v. Barnhart*, 315 F.3d 239, 255, 43 Fed. Appx. 634 (4th Cir. 2002); see also *Richlin Sec. Serv.*

*Co. v. Chertoff*, 553 U.S. 571, 581 (2008) (holding that the term "attorneys fees" includes "fees

for paralegal services").

Here, Mr. Patel attached detailed time sheets for Mr. Banias and Mr. Brown. Time Sheets

(attached as Ex. D).  Based on these contemporaneously kept—and subsequently cleaned up—

time records, Mr. Banias seeks reimbursement for 76.9 hours of work and $711 in costs. Under

the potential hourly rates, Mr. Banias requests the following:

| Hourly Rate | $125 | $260.16 | $829 |
|---|---|---|---|
| Attorney's Fee for 24.6 Hours | $9612 | $20,006.30 | $63,750.10 |
| Costs | $711 | $711 | $711 |
| Total Requested (including costs) | $10,323 | $20,717 | $64,461.10 |

Plaintiff requests the following fees and costs for Mr. Brown for his 52.3 hours of work and $1,168.05 in costs:

| Hourly Rate | $125 | $260.16 | $707 |
|---|---|---|---|
| Attorney's Fee for 52.3 Hours | $6,537.50 | $13,606.37 | $36,976.10 |
| Costs | $1,168.05 | $1,168.05 | $1,168.05 |
| Total Requested (including costs) | $7,705.55 | $14,774.42 | $38,144.15 |

For the reasons above, Mr. Patel requests $102,605.

11

## CONCLUSION

For these reasons, this Court should award the Plaintiff $102,605 under EAJA.

March 27, 2026                              Respectfully submitted,

s/Brad Banias
BRAD BANIAS
Banias Law, LLC
602 Rutledge Avenue
Charleston, SC 29403
843.352.4272
brad@baniaslaw.com

s/Steven A. Brown
STEVEN A. BROWN
Reddy Neumann Brown PC
11000 Richmond Ave, Suite 600
Houston, TX 77042
P: (713) 953-7787 ext. 145
steven@rnlawgroup.com
TXB 24091928

Attorneys for Plaintiff